## ANDERSON v. CHRISTBURGH.

No. 26212. Feb. 4, 1936.

Rehearing Denied March 10, 1936.

A. E. Pearson and Campbell Hippen, for plaintiff in error.

E. F. Lester and Joslyn Joseph, for defendant in error.

PER CURIAM. The parties will be designated herein as they appeared in the trial court.

Plaintiff, Mary J. Christburgh, sued defendant, Forest Anderson, for services rendered in caring for two grandchildren of defendant, upon his oral agreement to pay her the reasonable value of such services, alleging, after particularizing their character and duration, that her services were of the value of $5,250, and that defendant had paid her $25 thereon; and praying judgment for $5,225, the balance claimed due.

Defendant answered by a general denial, and also by specific denials, which, in effect, were merely a reiteration of the general denial. However, during the trial defendant was permitted to amend his answer by adding a plea of payment.

A jury was waived and the case tried to the court. The court found for plaintiff, and rendered judgment in her favor in the amount of $2,225.

Defendant, by his appeal, seeks to reverse such judgment, arguing the following assignments of error: The overruling of his demurrer to plaintiff's evidence; that the judgment is not supported by any competent evidence; the exclusion of certain competent testimony offered by him, and that the judgment is excessive.

There was no dispute in the evidence as to the period plaintiff cared for the children, nor as to the character of services she performed in this respect. Plaintiff took the children into her home at Oklahoma City; one of them, Felton Anderson, in October, 1928, and the other, Gladys Anderson, in March, 1929, and kept them, except for a vacation period, until June, 1933, during which time she furnished them board, room and clothing, sent them to school, and gave them practically the attention of a mother. The father of the children, a son of defendant by his first wife, had died in 1926, and prior to plaintiff's custody of them the children had been living with their mother, Lenora Cross, who had remarried, and who resided about one-fourth mile from the home of defendant, a man of considerable wealth, in Seminole county. Plaintiff, no blood relation to the children, was the mother of Harriet Anderson, the second wife of defendant; this marriage taking place in 1927, and the relation continuing until Harriet Anderson's death in 1932. Throughout the existence of this marriage, defendant and plaintiff were apparently most friendly, and it was during visits she made to defendant's home in 1928, according to plaintiff's testimony, the agreement was made whereby she assumed the care of the children.

There was a sharp conflict in the evidence as to any agreement on the part of defendant to pay plaintiff for keeping the children; the defendant asserting that plaintiff took the children for companionship, and without any procurement on his part or any promise by him to pay her for their keep. Plaintiff was corroborated as to the making of such contract by another witness, employed in defendant's home at the time; there was clearly evidence to support the court's holding that the parties made the contract as plaintiff alleged.

There remained in the case, however, disputed issues as to the value of the services rendered by plaintiff, and as to whether she had been paid as defendant alleged; the latter being an affirmative defense with the burden upon defendant to establish it. For a considerable part of the time plaintiff had charge of the children, she lived with them in a costly residence in Oklahoma City, built by the defendant in 1931, and defendant claimed to have paid the expenses of maintaining this place, as well as otherwise expending large sums of money for the benefit of plaintiff and the children, and that in this manner plaintiff had been more than paid. Defendant, however, admitted he built the Oklahoma City residence for the use of his wife and his own children, who spent a great deal of time in Oklahoma City, and defendant's statements regarding the upkeep of this place, and the money expended by him on behalf of plaintiff and the children, were stoutly controverted by plaintiff.

Defendant insists with much vigor that the testimony of plaintiff concerning the making and carrying out of the contract, and as to the sums spent by her in maintaining the children, was so incredible under the circumstances surrounding the parties, and in view of the financial condition of plaintiff, that it should have been wholly disregarded by the trial court. We cannot agree with defendant. While the evidence disclosed plaintiff did not possess large means, yet it failed to show an inability on her part to make the outlays she stated from her own resources, and the evidence was abundant

302

from other witnesses that plaintiff did pay for groceries, clothing, medical attention, and school expenses for the children, as well as performing services in cooking, washing, ironing, and otherwise contributing in a motherly way toward their moral, mental, and physical welfare.

Neither do we see anything unusual, considering the status and relationship of the parties, in the manner in which the contract was made and carried out. It is the normal thing for a grandfather, when able, to contribute to the support of impecunious grandchildren; and if he be wealthy, to entirely provide for them. In the light of rational human conduct, it is much more reasonable to think that the defendant, a wealthy man, would hire his wife's mother, a capable person with whom he was upon good terms, to take the children of his dead son from what appeared to be, under the evidence, a questionable environment, and give them needed care, than to believe the plaintiff, no blood relation to such children, would assume the responsibility of their rearing without any agreement for compensation. Nor do we consider it at all incredible that plaintiff should have kept the children as long as she did without more strenuously pressing the defendant for payment. She testified that at times she had asked him to make payments, but he would tell her to wait until the amount got big enough to do something with. Knowing defendant to be a rich man, plaintiff may well have thought her eventual recompense was likely certain, and perhaps the ultimate reward would be all the greater, if she refrained from annoying defendant with insistent demands, and allowed sufficient time for him to observe the results of her efforts with the children.

In accordance with the views above expressed, we hold the trial court did not err in overruling defendant's demurrer to the evidence; we also hold there was sufficient evidence to sustain the judgment. Defendant concedes, as he must, the settled rule that where the parties to a law action waive a jury and try their cause to the court, if there is some competent evidence supporting the judgment, it will not be disturbed on appeal. This is an appropriate case for the application of such rule.

Defendant argues that errors were committed in the exclusion of evidence, but cites no authority to support the argument made. While the plaintiff was under cross-examination, she was asked this question: "Your daughter had authority to and did check on

Forest Anderson's account all her life?" After she had answered, " I don't know anything about that," her counsel objected to the question, and was sustained. Whereupon defendant stated:

"The defendant at this stage offers to prove by this witness, if permitted, through all the years this plaintiff has alleged that Forest Anderson's wife, being the daughter of the plaintiff, who had authority to draw checks on his bank account, and did draw checks on his bank account in favor of the plaintiff, and he furnished the money all the time for the accounts of the plaintiff's mother, paying the expenses of the home from 1928 up until 1933."

The court sustained an objection made to this offer. We think this ruling was correct. The offer was entirely too general and indefinite. Besides, if the matters therein contained were relevant, which is doubtful, they were only so with respect to the defense of payment, and, at the time of the offer, the court had not yet permitted the amendment to the answer pleading payment; and defendant did not renew the offer after such amendment was allowed. 3 C. J. 827.

Also, on cross-examination of plaintiff, the court denied admissibility to an offer by defendant to show that, in another lawsuit between the same parties involving the title to certain real estate, the plaintiff had pleaded her signature to a deed was a forgery and offered a witness to prove the forgery was committed by her daughter, Forest Anderson's wife. The announced purpose of this offer was to affect plaintiff's credibility as a witness. It is true that considerable latitude is permitted on cross-examination, especially in matters affecting the credibility of the witness, even to the extent of inquiring into circumstances extraneous to the issues involved. But the range of such inquiry is wholly within the sound discretion of the court. Commercial Drilling Co. v. Kennedy, 172 Okla. 475, 45 P. (2d) 534; Devonian Oil Co. v. Smith, 124 Okla. 71, 254 P. 14. The trial court gave defendant ample latitude in the cross-examination of plaintiff, as well as the other witnesses, and there was no abuse of discretion in precluding inquiry into the minute and irrelevant details of former litigation between the parties.

Nothing in the record supports defendant's statement that the court was actuated by passion or prejudice in fixing the amount of plaintiff's recovery at an excessive amount. The court found that the reasonable value of the services rendered by plaintiff was $25

per month for each child. The evidence would have supported a higher figure. It is a matter of common knowledge to any person who has had experience in the cost of rearing children that the sum fixed by the court is not extravagant. Taking into consideration the financial station of defendant, the judgment of the court was very moderate. The case was fairly tried and defendant has no just reason to complain.

The judgment is affirmed.

The Supreme Court acknowledges the aid of Attorneys Eben L. Taylor, I. J. Underwood, and C. S. Walker in the preparation of this opinion. These attorneys constituted an advisory committee selected by the State Bar, appointed by the Judicial Council, and and approved by the Supreme Court. After the analysis of law and facts was prepared by Mr. Taylor and approved by Mr. Underwood and Mr. Walker, the cause was assigned to a Justice of this court for examination and report to the court. Thereafter, upon consideration, this opinion was adopted.

McNEILL, C. J., and BAYLESS, WELCH, CORN, and GIBSON, JJ., concur.