**BELFORD et al. v. ALLEN, Adm'r.**

No. 28227.   May 11, 1938.

Rehearing Denied June 14, 1938.

Application for Leave to File Second Petition for Rehearing Denied July 5, 1938.

Stephen A. George and John Clark Caldwell, for plaintiffs in error.

Williams & Williams, for defendant in error.

HURST, J. This is an action by an administrator for damages for fatal personal injuries. The first cause of action prayed for judgment in the sum of $5,014.50 for pain and suffering and hospital bills of the deceased, and verdict and judgment were for plaintiff on this cause of action in the sum of $500. The second cause of action prayed judgment for funeral expenses of deceased, and no verdict was rendered therefor. The third cause of action sought judgment in the sum of $33,742.80 for damages to the next of kin from the death of deceased, and verdict and judgment were for plaintiff in the sum of $4,500. Defendants appealed, making 29 assignments of error which are briefed and presented in three propositions.

The first proposition is that the trial court committed reversible error in refusing to declare a mistrial on account of the misconduct of counsel for plaintiff in making improper reference to the subject of insurance for the purpose of bringing to the attention of the jury the fact that defendants were protected by public liability insurance and thus gaining an unfair advantage over them. In this connection it is pointed out that counsel for plaintiff on the voir dire examination of the jury asked the following question: "Gentlemen of the jury, are any of you interested in the writing of public liability insurance, or interested in any insurance company as stockholders or otherwise?" Defendants' counsel then moved for a mistrial because counsel for plaintiff had no reason to believe the jurors might be so interested. Plaintiff's counsel replied that "there are bankers, business men, and farmers on this jury and I do not live in this county, if the court please, and the jurors are unknown to me and the only way I have of ascertaining their business and qualifications is to ask them their business." The court overruled the defendants' motion. The foregoing proceeding was had out of the presence of the jury.

The rule is well settled that "in the voir dire examination of jurors in a personal injury case, counsel for plaintiff may interrogate prospective jurors with respect to their interest in or connection with indemnity insurance companies, so long as he acts in good faith for the purpose only of ascertaining the qualifications of jurors, and not for the purpose of informing them that an insurance company is back of the defendant." Beasley v. Bond (1935) 173 Okla. 355, 48 P.2d 299; Kennedy v. Raby (1935) 174 Okla. 332, 50 P.2d 716; Safeway Cab Service Co. v. Minor (1937) 180 Okla. 448, 70 P.2d 76; Tulsa Yellow Cab, Taxi & Baggage Co. v. Salomon (1938) 181 Okla. 519, 75 P.2d 197.

Defendants recognize this rule, but assert bad faith on the part of plaintiff's counsel in that this case was tried in Mari-

etta, Okla., a town with a population of 1,506 people, and plaintiff's counsel had recently been county attorney of Love county, in which Marietta is located. Defendants then assert that "there can be little doubt but that he (plaintiff's counsel) was personally acquainted with every man on the jury and knew they were farmers and that no member of said jury had an insurance connection which could affect his qualification to serve on said jury in the slightest degree." Defendants also point to the fact that all the cases wherein such questions on voir dire examination have been permitted arose from Tulsa and Oklahoma counties, where the attorneys were not likely to know the business interest of the jurors, and quotes from the case of Kennedy v. Raby, supra, wherein the statement was made that "in a city the size of Tulsa it would occasion no surprise to find a stockholder of some indemnity company in the jury panel, and, if so, litigants and their counsel would be entitled to elicit such fact."

It is to be noted, however, that the matter of granting a mistrial on account of the allowance of such questions rests largely in the discretion of the trial judge, who has ample power to prevent any injustice to the litigants, and his rulings will not be reversed unless there is a clear abuse of such power. In the present case, the local situation set out by defendants' counsel to show bad faith on the part of plaintiff's counsel was better known to the trial judge than to this court, and he concluded that no bad faith was shown. There being nothing in the record to show otherwise, we cannot say that the trial judge clearly abused his discretion. The fact that the cases heretofore cited arose from Tulsa and Oklahoma counties is mere coincidence and of no importance, since this court has no control over parties desiring to appeal their cases. The statement made in the Kennedy Case, supra, could as well be made applicable to any case where the record does not affirmatively show that the interrogating counsel is personally acquainted with the business interests of every juror. In the absence of such evidence or a showing that the trial court abused his discretion in declining to declare a mistrial, this court will not review his ruling.

■ Defendants' next proposition is that the trial court committed reversible error in giving instructions Nos. 8, 9, and 10.

(a) Defendants contend that instruction No. 8 is erroneous in informing the jury,

among other things not pertinent here, that the driver of the rear car (who in this case were the defendants) "must not only sound his horn, but, before attempting to pass, he must be reasonably assured that the driver ahead knew he was behind, and heard the request, and accorded the right of way before the driver of the car ahead can be charged with negligence in failing to give the right of way by reason of a usual use of a roadway."

A rule of law identical to the above instruction was quoted with approval by this court in the case of Smith v. Clark (1926) 125 Okla. 18, 256 P. 36, and defendants in their brief admit the instruction to be sound where road conditions are such as not to permit the driver of the rear car to pass the front car safely until the front car pulls to the right and accords the right of passage to the rear car, but contends that such rule can have no application to a modern two-lane highway such as U. S. Highway 77, upon which the collision in this case occurred. We cannot agree that this distinction affects the duty of the driver of the rear car attempting to pass the front car. Regardless of the condition of the road, the law, as stated in Smith v. Clark, supra, imposes the duty on the driver of the rear car, when passing a car ahead, to sound his horn, and before attempting to pass be reasonably assured that the driver of the front car knew he was behind and heard the request and accorded the right of way.

Defendants further rely on the case of Banta v. Hestand (1938) 181 Okla. 551, 75 P.2d 415, in support of their contention that instruction No. 8 is erroneous. In that case, we held that it was reversible error for the trial court to inform the jury that the driver of the rear car, before passing the front car, must give a signal and "must know that the driver in the front car has heard such warning and knows what the driver of the rear vehicle wants of him." It is apparent that this places a much greater duty on the driver of the rear car than the rule stated in Smith v. Clark, supra. There is a vast difference in being "reasonably assured" and "knowing" that the driver of the front car heard the warning. Furthermore, the instruction in the Banta Case placed the duty on the driver of the rear car to know that the driver of the front car "knows what the driver of the rear car wants of him." The rule stated in the Smith Case and the instruction in the instant case places no such burden on the driver of the rear car.

In addition to the foregoing it is to be noted that we pointed out in the Banta Case that the Smith Case was not applicable thereto. It cannot be said, therefore, that the instruction condemned in the Banta Case is analogous to the one given in the instant case, so as to require a reversal of the present case on the basis of the Banta decision.

(b) Before considering the alleged error of the trial court in giving instructions Nos. 9 and 10, we will first consider the nature of the present action. The third cause of action (to which these instructions apply) was instituted by the administrator of the estate of the deceased, alleging that deceased left surviving as next of kin, six children, for whose benefit the action was prosecuted, naming them and giving their ages. Four of the children were adults and two were minors. Plaintiff then alleged that deceased was 49 years of age and had an expectancy of life of 21.63 years; and alleged damages in the sum of $33,743.50 as pecuniary loss, and prayed judgment therefor. The evidence discloses that one of the adult children and both minor children lived at home; that deceased operated a small dairy, earning therefrom the sum of from four to five dollars per week; that she kept house, hired a housekeeper, and superintended the housekeeping.

Instruction No. 9 informed the jury that the measure of damages, in the event of a finding for plaintiff, "is the pecuniary loss suffered by the children due to their being deprived of the care, protection, and support of the deceased parent, to be determined by the age, physical condition, occupation, earning capacity and habits of the deceased mother, as shown by the testimony, considered together with the use of her income and earnings for the support of such children, and the pecuniary value of the care and attention accorded her children, and the probable duration of the benefits had she lived. In arriving at the value of the services of the deceased mother, you may take into consideration the frugality, usefulness, attention and tender solicitude which the mother of children would bestow upon the performance, management and superintendence of the affairs of the household."

Instruction No. 10 reads as follows:

"You are instructed that the law will imply substantial loss from deceased's death to minor children, the amount depending upon the proof, but you are instructed that the right of the children of a deceased parent to recover damages for the wrongful death of such parent is not limited to the time of their minority, but extends to and after they obtain the age of majority, but the recovery had, whether by minor or adult children, must be based upon the reasonable expectancy of pecuniary benefit of which they were deprived by the death of their mother."

Defendants first contend that the case was prosecuted on the theory that the children of the deceased were entitled to recover on the basis of their relationship alone without regard to proof of pecuniary loss to said children. While counsel do not say so, we assume the purport of their contention to be that the foregoing instructions are erroneous because they permit recovery by the children without proof of pecuniary loss.

We cannot agree with this contention. Plaintiff's petition plainly alleges damages "for pecuniary loss," and instruction number 9 informs the jury that plaintiff's measure of damages, in case of a finding in his favor, is the pecuniary loss to the children by virtue of the death of deceased. Instruction number 9 is in substance the same as that approved by this court in the case of Catto v. Maxey (1935) 170 Okla. 356, 40 P.2d 633. See, also, Big Jack Mining Co. v. Parkinson (1913) 41 Okla. 125, 137 P. 678. Instruction No. 10 is correct in all respects. See Missouri-Kansas-Texas R. Co. v. Canada (1928) 130 Okla. 171, 265 P. 1045, and Tackett v. Tackett (1935) 174 Okla. 51, 50 P.2d 293 (holding that in an action such as the present one, the law implies substantial loss to a minor child of the deceased), and Gypsy Oil Co. v. Green (1921) 82 Okla. 147, 198 P. 851 (holding that the right of recovery is not limited to children of deceased to losses suffered during their minority, but extends to probable pecuniary loss after they reach their majority; the recovery, however, whether by minor or adult children, to be based upon the reasonable expectancy of pecuniary benefit, of which they were deprived by the death of their parent).

Nor can we agree with defendant that the giving of the instructions constituted reversible error for the reason that there was no pleading or evidence to warrant them. Plaintiff's third cause of action was predicated on pecuniary loss, and the evidence clearly showed pecuniary loss to at least one of the adult children and the two minor children. The jury was properly instructed as to the measure of damages, and

In a death case its finding will not be disturbed on appeal unless it appears from the record that the jury was swayed by passion or prejudice against the losing party, and unless the recovery is so large as to shock the sense of justice, there being competent evidence reasonably tending to support the verdict. Schaff v. Daugherty (1925) 112 Okla. 124, 239 P. 922; Fike v. Peters (1935) 175 Okla. 334, 52 P.2d 700, and the cases cited therein.

■ Defendants' third proposition contains two contentions.

(a) The first is that the trial court erred in not granting a new trial on account of the misconduct of a juror, who was seen in the company of a witness for plaintiff during the noon-hour recess. While the motion for new trial was verified, the specifications of error therein relating to the alleged misconduct of the juror were not sustained by affidavits as required by section 401, O. S. 1931. Nor did the motion for new trial allege that the defendants had been prejudiced by the alleged misconduct of the juror and that they did not learn of said conduct in time to call the same to the attention of the court before the rendition of the verdict. We cannot, therefore, consider the alleged error of the trial court in denying the motion for new trial on this ground. L. O. & H. L. Street v. Arnold (1935) 170 Okla. 389, 40 P.2d 1050.

(b) The second contention is that the trial court erred in not granting a new trial on account of newly discovered evidence which, it is alleged, would likely have changed the result of the decision. The newly discovered evidence consisted of proof impeaching a witness for the plaintiff. Counsel for defendant recognizes the rule that in order to grant a new trial on account of newly discovered evidence the evidence must fulfill the following requirements: (1) It must be such as will probably change the result if a new trial is granted; (2) it must have been discovered since the trial; (3) it must be such as could not have been discovered before the trial by the exercise of diligence; (4) it must be material to the issue; (5) it must not be merely cumulative to the former evidence; (6) it must not be to merely impeach or contradict the former evidence. Holmes v. Chadwell (1934) 169 Okla. 191, 36 P.2d 499; Holly v. Holly (1935) 174 Okla. 626, 51 P.2d 527.

Defendants, however, assert that there is an exception to the above rules which is applicable to this case, and that is, that if the testimony of the witness sought to be impeached was so important to the issue and the evidence impeaching the witness so strong and convincing that a different result must necessarily follow were a new trial granted, then the new trial should be granted. In support thereof counsel cites 20 R. C. L. 294; Denver City Tramway Co. v. Brier (Colo.) 152 P. 901; Egan v. Dotson (S. D.) 155 N. W. 783; State v. Mounkes (Kan.) 138 P. 410; State v. Swartz (Wash.) 182 P. 953; Vickers v. Philip-Carey Co. (1915) 49 Okla. 231, 151 P. 1023.

Whatever may be the rule in other states, it is well established in this jurisdiction that newly discovered evidence which merely impeaches or contradicts a witness is not sufficient upon which to grant a new trial. M., K. & T. R. Co. v. Embrey (1934) 168 Okla. 433, 33 P.2d 481. Nor does the case of Vickers v. Phillip-Carey Co., supra, cited by defendants, hold contrary to this rule. In that case, we laid down the six requirements that newly discovered evidence must fulfill before a new trial may be granted thereon, including the one that it must not be to merely impeach or contradict the former evidence. As stated in that case, if the newly discovered evidence "tends to prove a distinct and material fact, and would probably produce a different result, a new trial, it is true, should be granted, although such evidence may also tend to impeach the adverse party or his witnesses." It can be seen from this statement that if the newly discovered evidence only impeaches the witness, but proves no distinct and material fact, it does not fulfill the requirement that such evidence must not be merely to impeach or contradict a witness. It is likewise true that the granting of a new trial on the ground of newly discovered evidence rests largely in the discretion of the trial court, and where the trial court overrules said motion, this court will, in the absence of abuse of discretion, affirm the action of the trial court. M., K. & T. R. Co. v. Embrey, supra.

We cannot say that the trial court abused its discretion in denying defendants' motion for new trial in view of the present record. It appears from the record that the newly discovered evidence seeks only to impeach a witness for plaintiff, and is merely cumulative of testimony already adduced by defendants at the trial by three witnesses to the effect that they did not see the allegedly impeached witness for plaintiff at the scene

of the collision, about which he had testified as an eyewitness.

Pursuant to the request of the plaintiff, the trial court is hereby directed to compute the proper amount and enter judgment therefor against the Hartford Accident & Indemnity Company, surety on the supersedeas bond filed in this cause.

Affirmed.

BAYLESS, V. C. J., and RILEY, PHELPS. and GIBSON, JJ., concur.