**COOK et al.  v.  KNOX.**

No. 36095.

Supreme Court of Oklahoma.

June 8, 1954.

Rehearing Denied July 13, 1954.

866

Rizley, Tryon & Sweet, Guymon, Carl Rizley, Sayre, Rucker & Tabor, Thomas L. Palmer, Tulsa, for plaintiffs in error.

Merle Lansden, Beaver, for defendant in error.

O'NEAL, Justice.

This action was brought by the administrator of the estate of Charlene Ann Knox, deceased, against Darwin C. Cook and Oklahoma Trailer Convoy, Inc., a corporation, to recover damages for the alleged wrongful death of the deceased.

On the 31st day of July, 1951, A. M. Knox was operating an automobile in a westerly direction on U. S. Highway 64, at a point several miles east of the town of Forgan, Oklahoma, at which point the Knox automobile and a Chevrolet pick-up truck, operated by Darwin C. Cook, the alleged agent of the Oklahoma Trailer Convoy, collided head-on, resulting in injuries to Charlene Ann Knox, from which she died approximately one hour later.

The plaintiff, upon the trial, recovered a judgment against both defendants in the amount of $18,400, and from the order denying a new trial defendants have perfected separate appeals.

The case may be characterized as unique, as neither defendant challenges the sufficiency of the evidence as to the defendant Cook's negligence to sustain the verdict and the judgment thereon. The contentions respectively made, and arguments present-

ed, are based only upon alleged errors of law occurring at the trial.

For convenience we will generally refer to the plaintiff in error, Oklahoma Trailer Convoy, Inc. as Convoy, and to the plaintiff in error, Darwin C. Cook, as Cook, and to the defendant in error as the administrator.

Convoy's contention for a reversal is principally based upon its assertion that the undisputed evidence shows that the defendant Cook was an independent contractor at the time of the accident, and was not an employee of Convoy.

Cook's contention for a reversal is based upon:

(a) The alleged incompetency of the administrator to maintain the action. His contention is that an action for the wrongful death of a non-resident of Oklahoma must be brought by the surviving widow or next of kin;

(b) That the Court's Instructions Nos. 2, 3 and 16 are erroneous requiring a reversal; and

(c) That the trial court committed reversible error in entering the jury room while the jury were conducting their deliberations and in the absence of the parties or their attorneys.

With reference to the instructions on the question of independent contractor, we find that the court instructed the jury as follows:

"You are instructed that an independent contractor is one who engages to perform certain services for another, according to his own manner and methods, free from control and direction of his employer in all matters connected with performance of service, except as to result or product of work."

We further find that at the defendant Convoy's request the court gave two additional instructions, Nos. 6 and 9, which respectively read as follows:

"Where the driver of a motor vehicle exercising an independent employment contracts to perform obligations according to his own methods and without control except as to the result of the work, such driver is an independent Contractor and the employer is

not liable for the negligence of such driver."

"Before the plaintiff can recover against the defendant Oklahoma Trailer Convoy, Plaintiff must prove by a preponderance of the evidence that Darwin Cook was the servant and employee of Oklahoma Trailer Convoy, and that Oklahoma Trailer Convoy had the right to direct the mode and manner of Darwin Cook's work, and that Darwin Cook was acting within the scope of his authority and employment at the time of the accident."

As the foregoing instructions correctly declared the law applicable as applied to the question of agency or independent contractor, we must look to the proof to determine whether the verdict as Convoy asserts, is contrary to the evidence upon that issue.

On June 22, 1951, Convoy entered into a contract in writing with Cook, wherein Cook agreed to perform certain work in the transportation of trailers, both interstate and intrastate, to destinations over routes designated by Convoy. Convoy operated as a carrier under a permit issued by the Interstate Commerce Commission, as well as the Oklahoma Corporation Commission. Cook did not have a permit issued by either of said Commissions. Cook furnished a three-fourths ton pick-up truck which he used in transporting house trailers for Convoy as designated by it.

The contract, among other things, provides:

"To comply with all pertinent rules and regulations wherever said transportation may occur or be required, and shall further comply with the instructions given by the Carrier with relation to the manner and method of caring for and handling the traffic transported for the Carrier under this agreement. It is understood that as between the Operator and the Carrier, the Carrier shall have the entire supervision concerning direction and control over the transportation of traffic under this agreement, such as the designation of points of origin and destination, and

issuance of general instructions to be observed and carried out by Operator for the proper handling of the Carrier traffic in compliance with the rules and regulations of the Interstate Commerce Commission."

The vice-president of Convoy, as a witness, detailed the duties required of Cook under the contract. He stated that the Federal and State permits were delivered to Cook and in some instances they were attached to the truck, and in other instances they were placed upon the side of the truck. He stated that although the lease contract specified a yearly term, that Convoy could, and in some instances did, cancel identical lease agreements with other truck drivers, and in certain instances discharged the driver without notice; that the operator of the truck was required to keep a log on outgoing trips from Tulsa, and also upon his return trip, which records were kept in Convoy's office for inspection by the I.C.C.; that on occasions drivers of trucks under the lease contracts were authorized to pay certain fees for Convoy and were subsequently reimbursed for such expenditures; that on some occasions truck drivers collected cash and checks covering freight bills of the equipment transported by them, which collections were either mailed to Convoy or delivered to it upon the return of the operator; the operator under the lease contract was instructed that if he followed the instructions of Convoy, the Corporation would pay certain fines assessed by State authorities—otherwise the operator of the truck would be on his own.

There is evidence tending to establish that when a lease operator returned to Convoy's office at Tulsa, that he would be reassigned in rotation with other drivers to transport future equipment for Convoy.

Convoy contends that the evidence thus produced establishes as a matter of law that Cook was an independent contractor, thus relieving it from liability.

■ We are of the view and so hold that the question as to whether Cook was the agent and employee, or was an independent contractor at the time of the accident was, under this record, a disputed question of fact, and that the issue was properly submitted to the jury under correct statements of the law. It may be conceded that the evidence on that issue is in conflict, but we find substantial evidence to support the verdict and judgment rendered.

■ We have frequently held that where evidence is conflicting on the question of the right of an employer to control or direct details of the work to be performed that the issue is one of fact for the jury. Modern Motors, Inc., v. Elkins, Adm'r, 189 Okl. 134, 113 P.2d 969. Likewise, where the evidence is conflicting as to whether the driver of an automobile, at the time of the accident, was acting within the scope of his employment and of his master's business, is a question of fact to be decided by the jury.

■ The question in each case must be resolved upon facts whether the work to be performed for another was according to his own manner and method, free from control or direction of his employer in all matters connected with the performance of the service, except the result or product of the work. World Publishing Co. v. Smith, 195 Okl. 691, 161 P.2d 861.

We have examined Bradley v. Chickasha Cotton Oil Co., 184 Okl. 51, 84 P.2d 629, relied on by Convoy to sustain its contention that in the instant case the trial court should have sustained Convoy's motion for judgment upon the ground that the undisputed facts established that Cook was an independent contractor. The factual situation presented in the Bradley case is distinguishable from the case at hand. Bradley brought an action for personal injuries against the Chickasha Cotton Oil Co. on plaintiff's own evidence that Moore, the owner of the truck, and his employee, Walters, who was operating the truck at the time of the accident was an independent contractor and not its servant. That case was based solely upon facts not in controversy.

■ We have frequently held that where evidence is undisputed, the question of whether the relationship of the parties is that of independent contractor and contractee, or employee and employer, is one of

law for determination of the Court. Fairmont Creamery Co. v. Carsten, 175 Okl. 592, 55 P.2d 757. We agree with Convoy that the relation of the defendant Cook and Convoy must be determined as of the time of the accident. Its premise is correct. What are the facts?

Under the agreement referred to Cook pulled the house trailer from Tulsa to Umatilla, Oregon. He was returning to Tulsa in his pick-up truck when the accident occurred. As we have pointed out, the lease agreement covered a period of one year, and undoubtedly the parties under the contract contemplated that Cook's services would be required in the transportation of additional trailers for Convoy. Upon Convoy's theory that Cook in no event, could be the agent of Convoy upon the return trip, Convoy assumes that it was a "one trip contract" and that upon that assumption the instant case is governed by the principle of law declared in Costello v. Smith, 2 Cir., 179 F.2d 715, 16 A.L.R.2d 954. A reading of the Costello case discloses that the employment there covered a single "one-way trip"; that after the operator delivered the merchandise to its destination his services came to an end. Thereafter, there was no obligation of the operator to perform any future services. The court in the opinion carefully pointed out the lease provided that upon discharge of the load at destination the lessee will immediately "deliver said vehicular equipment into the possession of the lessor or its agent at the point of discharge and all obligation and responsibility of the lessee under the terms of this lease shall immediately cease."

It is clear to us that the Costello case was thus based upon a finding that the carrier had hired the truck for that "one-way trip" and that one-way trip alone.

Convoy next asserts error in the court's refusal to permit it to produce evidence that the lease operators of Convoy were not members of the labor organization of which other employees of Convoy were affiliated. The evidence was excluded upon plaintiff's objection as to its relevance; thereupon, Convoy made the following offer of proof:

"In reference to this particular thing, we offer to prove the employees of the defendant company are members of the Teamster's Union and are authorized to bargain collectively with a company; that the leased operators are not members of the Union. They are unable to bargain. They had a hearing before the National Labor Relations Board and it was determined that a leased operator was not an employee and did not have the right to bargain collectively. We would like to show that for the purpose of control and lack of control of the employees."

Convoy submits this alleged error without argument or citation of authority.

We think the proffer of proof was not germane to any issue in the case. Whether the National Labor Relations Board's construction of the National Labor Relations Act, that lease operators were not eligible to membership in the same union as salary or wage employees of Convoy, does not prove or disprove the crucial question as to whether Convoy exercised such control as to constitute the negligent person, its agent or servant.

We find no error in the record upon the grounds relied upon by Convoy and the judgment against it must be affirmed.

We next consider Cook's assignments of error:

(1) Was the action properly brought by the administrator of the estate of Charlene Ann Knox, deceased?

Mrs. Knox, the deceased, was a resident of the State of Kansas at the time of the accident and her death. Cook contends that the action can only be maintained by the surviving widower or next of kin. In support of that position he relies upon Title 12 O.S.1951 §§ 1053–1054, and upon cases which it is claimed support his assignment of error.

Title 12 O.S.1951 § 1054, reads as follows:

"In all cases where the residence of the party whose death has been caused as set forth in the preceding section of this article is at the time of his death in any other State or Territory, or

when, being a resident of this State, no personal representative is or has been appointed, the action provided in the said section may be brought by the widow, or where there is no widow, by the next of kin of such deceased."

Under this section the next of kin could, if they so desired, bring the action for wrongful death of a non-resident deceased; however, the plaintiff in the instant case elected to bring the action under Title 12 O.S.1951 § 1053, which reads:

"When the death of one is caused by the wrongful act or omission of another, the personal representative of the former may maintain an action therefor against the latter, or his personal representative if he is also deceased, if the former might have maintained an action had he lived, against the latter, or his representative, for an injury for the same act or omission. The action must be commenced within two years. The damages must inure to the exclusive benefit of the surviving spouse and children, if any, or next of kin; to be distributed in the same manner as personal property of the deceased."

█ Clearly, under the latter section the adminstrator of an estate may maintain an action for the recovery of damages for wrongful death, irrespective of the residence of the deceased.

The administrator in the present proceeding was duly appointed as administrator by the County Court of Beaver County, Oklahoma, and was the qualified and acting administrator in the filing and maintenance of the present action. Numerous cases are cited by Cook of which Chicago, R. I. & P. Ry. Co. v. Brooks, 57 Okl. 163, 156 P. 362, is illustrative, to support his contention that the present action could not be maintained by the administrator.

The cited case and others relied upon hold that in an action for wrongful death brought by the widow, and where it is alleged that no personal administrator has been appointed, but there is a total failure of proof with reference to such appointment, that a recovery could not be had. The reason for the rule stated is that if

there is a personal representative of the deceased, that the widow has no right of action.

Cook's reply brief cites the case of Riley v. Fallon, 173 Kan. 816, 252 P.2d 629, 632 in support of his contention that only the surviving spouse or next of kin may maintain the present action. The Kansas Statute Section 60-3203 and Section 60-3204 in all essentials are comparable to Title 12 O.S.1951 §§ 1053 and 1054. The record of the case discloses that William L. Riley, a resident of Texas, was killed in an automobile accident in Kansas. His widow, Nova J. Riley, on July 2, 1951, brought an action in Sedgwick County, Kansas for his wrongful death. The action was brought in behalf of the widow and children; no administrator had been appointed. On February 2, 1952, Don Riley, a son, had himself appointed administrator of his father's estate and brought an action alleging the identical facts, and the identical relationship of the parties, as pleaded in his mother's action. A contest thus arose between the widow and son as to who could maintain the action.

In a pre-trial hearing the court concluded as a matter of law that the widow's action was lawfully commenced, and she should be permitted to maintain the same, or the administrator should be permitted to be substituted in the case, and thereupon dismissed the son's case without prejudice. Both parties appealed.

All that the case decides is that the widow who filed the first action was a proper person to maintain the action. Nowhere in the opinion is found any language justifying the contention that the administrator, if he had brought the first action, could not have maintained the suit.

The Supreme Court simply adopted the conclusions of law of the trial court, and stated:

"It was perfectly proper for his widow to bring an action in Kansas for the wrongful death of her husband. That is what she did. It follows the trial court was correct in its conclusion of law that the case of Nova J. Riley v. Virgil Fallon was lawfully commenced, and was also correct in dismissing the

action brought by the administrator. This is about all there is to this case."

■ The trial court and the Supreme Court were of the opinion that two actions could not be maintained against the same defendant to recover for the same alleged wrongful death by different persons in name only for the benefit of the same persons. That is all the opinion decides. We are of the view, and so hold, that the present action was properly brought and maintained by the administrator of the estate of Charlene Ann Knox.

(2) Cook further alleges errors in the court's instructions Nos. 2, 3 and 16.

In instruction No. 2 the court advised the jury as follows:

"You are instructed that the measure of damages for the wrongful death of a wife and mother is the pecuniary loss suffered by the widower and minor child by being deprived of her care and support, as determined by her age, physical condition, occupation, earning capacity and the use made by her of her earnings."

Cook's assignment of error is based upon the proposition that the instruction submits to the jury consideration of the deceased's "occupation, earning capacity, and the use made of her earnings."

■ The instruction is supported by proof tending to establish that the deceased had a high school education and attended a business college, and was a qualified bookkeeper, capable of earning $200 monthly, and that she had contributed all of her earnings to the support of the family. At her death she was twenty-five years of age and the surviving child was three years of age. We are of the view that the instruction in all essential respects is comparable to an instruction in Belford v. Allen, Adm'r, 183 Okl. 256, 80 P.2d 671, 675.

Cook further asserts error in the court's instruction No. 3, which reads as follows:

" 'You are instructed that the law will imply substantial loss from deceased's death to minor children, the amount depending upon the proof, but you are instructed that the right of the children of a deceased parent to recover damages for the wrongful death of such parent is not limited to the time of their minority, but extends to and after they obtain the age of majority, but the recovery had, whether by minor or adult children, must be based upon the reasonable expectancy of pecuniary benefit of which they were deprived by the death of their mother'."

■ It was specifically held in Belford v. Allen, supra, that "the law implies damages of a substantial character to minor children in an action to recover damages for the wrongful death of a parent." Moreover, from the proof made the jury might properly find that the mother's aid to her infant child would not be limited to the child's minority. Recovery beyond majority is based upon the reasonable expectation of pecuniary benefit, of which the child was deprived by the mother's death.

Opposition is also lodged against the court's instruction No. 16, which we may assume was inadvertently given by the trial court. That instruction reads as follows:

"Should you find from a preponderance of the evidence, under the instructions, in favor of the plaintiff, then you may assess the amount of recovery for such damages, if any, which you find from a preponderance of the evidence were sustained by plaintiff as a direct and proximate result of the accident, and which you find will fairly and reasonably compensate plaintiff in so far as the same may be computed in money, and in this regard you may take into consideration the age of plaintiff, the physical condition of plaintiff immediately before and after the accident; the nature and extent of the injuries, if any; whether the injuries, if any, are permanent or otherwise, the physical impairment, if any, the pain and suffering endured and likely to be endured in the future, if any, and award such sum as you determine will reasonably compensate plaintiff therefor, not to exceed, in any event, the amount sued for, $84,249.66."

As Mrs. Knox died immediately after the accident, that portion of the instruction which advised the jury that they may take

into consideration plaintiff's physical condition immediately before and after the accident, the nature and extent of her injuries, whether permanent or otherwise, and the pain and suffering, was clearly outside the issues and should not have been submitted as elements of damages. We find, however, that the court correctly stated the measure of damages as a pecuniary loss as indicated by instructions Nos. 2 and 3.

We conclude from a review of the entire record, giving consideration with reference to the amount of recovery, that no prejudice resulted to the defendant from the giving of instruction No. 16.

We have frequently held that although an instruction may contain an improper statement of the law that if taken as a whole the instructions adequately present the issues sustained by proof, that the cause will not be reversed in the absence of a showing of prejudice.

In Larkins-Warr Trust v. Watchorn Petroleum Co., 198 Okl. 12, 174 P.2d 589, 590, we held:

"Before the court will reverse a judgment based on the verdict of a jury because of the giving or refusal to give instructions, it must clearly appear that the instructions given or refused have caused a miscarriage of justice. This question is to be determined as much by the evidence before the jury as by the abstract accuracy of the language used or refused."

Lastly, it is asserted that the trial court committed reversible error in entering the jury room while the jury were conducting their deliberations and in the absence of the parties or their attorneys. This assignment is not supported by the record and will not be noticed.

Finding no substantial error in the record the judgment of the trial court is affirmed.

JOHNSON, V. C. J., and CORN, DAVISON, ARNOLD and BLACKBIRD, JJ., concur.

WILLIAMS, J., dissents.