CONNIE'S PRESCRIPTION SHOP, an Oklahoma Corporation, Plaintiff in Error,

v.

Robert J. McCANN and Judy Kathleen McCann, by her father, Robert J. McCann, Defendants in Error.

No. 37369.

Supreme Court of Oklahoma.

July 30, 1957.

Rehearing Denied Oct. 15, 1957.

Pierce, Mock & Duncan, Oklahoma City, for plaintiff in error.

Whitten, Whitten & Fields, Oklahoma City, for defendants in error.

DAVISON, Justice.

This action was brought by Robert J. McCann and Judy Kathleen McCann, by her father, Robert J. McCann, as plaintiffs, against Connie's Prescription Shop, a corporation, and Mickey Merrill, as defendants, to recover for the alleged wrongful death of Betty Jane McCann, the wife and mother of the plaintiffs. The parties will be referred to as they appeared in the trial court.

The deceased, Betty Jane McCann, died on June 27, 1955, as a result of taking a dose of medicine compounded by the defendant, Mickey Merrill, a pharmacist employee of the defendant, Connie's Prescription Shop, and which contained a lethal poison, erroneously incorporated therein by said defendants. Legal liability was admitted and the only issue tried to the jury was as to the amount of damages. The verdict and judgment thereon was for $62,000 for wrongful death plus the funeral expenses. Defend-

ants appeal therefrom upon the one proposition that,

"The verdict in this case was excessive and the trial court committed error in failing to order a new trial or a remittitur."

The evidence can be more accurately evaluated if attention is first directed to the relative amount of the judgment as measured by decedent's life expectancy. The judgment was for $62,000 and the life expectancy was 38.61 years. By simple mathematical calculation, it is seen that the judgment was an award of some $1,605 per annum for the expected remainder of the life of plaintiff's decedent, had she lived. Turning then to the financial loss suffered by the plaintiffs by virtue of the wrongful death, the record discloses that the deceased was a capable and talented person. She was a normally healthy person with a marked degree of ability as a scamstress, a singer and a practical nurse. Judy Kathleen McCann, one of the plaintiffs herein, was a seven year old child at the time of her mother's death and was suffering from, and was being professionally, medically treated for, a type of skin allergy which required a highly specialized diet and repeated bathing which duties her mother performed in a very capable manner. That this allergic condition would continue for an indefinite number of years. The cost of a housekeeper who could also discharge these additional duties toward the child would have been a minimum of $300 monthly plus room and board.

■ The expectation of a child for contribution from the parent who has been wrongfully killed is not necessarily limited to the minority of the child but may extend to all pecuniary benefit reasonably expected. Belford v. Allen, 183 Okl. 256, 80 P. 2d 671; Cook v. Knox, Okl., 273 P.2d 865; Gypsy Oil Co. v. Green, 82 Okl. 147, 198 P. 851. In the case under consideration, the evidence as to the character, ability and attentive disposition of the deceased coupled with the medical testimony concerning the nature of her child's ailment is amply suf-

ficient to establish a reasonable expectation that the deceased would have continued these services and attentions beyond the child's minority.

Included in the services, above discussed and evaluated, were those services of the deceased as a housekeeper which were performed for the benefit of the husband as well as for the daughter plaintiff. The record contains much evidence also of other services which the deceased performed and which constituted a pecuniary benefit for the husband individually, who was a man of modest means 32 years of age. The deceased personally cared for the flowers around the home and cut the lawn rather than hiring it done at the husband's expense. She also did all of the family laundry. She did all of the family bookkeeping and business management, efficiently keeping the overall expense at a minimum and well within the husband's earned income. She did the family sewing, mending and related services, saving many dollars on the family clothing expense. These services which she performed had a sizeable pecuniary value to the husband, of which he was deprived by his wife's untimely death. The record does not contain any testimony of experts or opinion evidence establishing the monetary or pecuniary value of those expected services, but they were such that their value was well within the common knowledge of the average juror. They, in addition were in that category where the extent and value there would fluctuate with the living standards of the particular family being considered. Expert testimony would not necessarily be any more accurate or stable than the personal opinions of the individual jurors.

There is a marked similarity between a death action wherein the husband, as here, seeks to recover the pecuniary value of the anticipated services of his wife, of which he has been deprived, and an action on contract wherein a plaintiff, similarly situated as was the deceased, seeks to recover the pecuniary value of the same type and kind of services, theretofore performed for another. The services are the same. Their pecuniary value must be established by the same kind of evidence. The measure to be used in such evaluation is referred to by the legal phrase "quantum meruit." The jury in either case must arrive at a specific and definite monetary sum in its verdict. At first blush, it would seem that there should be some evidence of the actual pecuniary value of such services and, indeed that is ordinarily so. But, where the type of service is not of a specialized character and is within the common knowledge of the average man who is also cognizant of what the services are worth, the requirements have been relaxed.

Recognition of that relaxation was made by the Ohio Court in the case of Hossler v. Trump, 62 Ohio St. 139, 56 N.E. 656, wherein it was held,

"When, upon the trial of the general issue in an action upon a quantum meruit for services of a domestic character, the plaintiff offers evidence showing the facts from which the promise to pay may properly be inferred, and also showing the nature and extent of the services rendered, the case should be submitted to the jury, although no witness expresses an opinion as to the value of the services."

and by the California Court, in the case of Collier v. Landram, 67 Cal.App.2d 752, 155 P.2d 652, 655, wherein it was said that,

"* * * a jury or trial judge possesses a sound discretion in fixing the reasonable value of services performed under an implied agreement to pay for the same, even in the absence of expert testimony of the value."

Although the rule is not stated or discussed therein, its effect was recognized by this court in the case of Anderson v. Christburgh, 176 Okl. 300, 55 P.2d 65, wherein plaintiff recovered $25 per month as a reasonable amount in payment for her services in keeping and caring for each of defendant's grandchildren.

■ In the case at bar, the verdict of the jury represented a value of about $1,605 annually for the life expectancy of the de-

ceased as recompense for the loss of her services by her husband and child. In the light of the services she performed and would have continued to perform for them and the value thereof as established by the testimony of expert witnesses and as determined by the jury, based upon their common knowledge of the pecuniary value of such services which were detailed in the evidence, the judgment was supported thereby and was not excessive.

■■ Although the amount of the verdict is larger than those rendered in previous similar wrongful death actions heretofore presented to this court, we cannot, under present economic conditions, say that the amount of the same shocks the sense of justice. It was pointed out in the case of Independent Eastern Torpedo Co. v. Prince, 208 Okl. 633, 258 P.2d 189, 191, that,

"Complaint that damages are excessive cannot be sustained by authorities or opinions written several years ago, as we do not consider them as a measure of damage in this time of the devaluated dollar, the higher individual earning capacity, and the modern tendency of allowing much larger verdicts to stand than were permitted a few years ago."

The gist of that rule is that the number of dollars does not constitute a measure, within itself, by which to compare various verdicts rendered in cases, between whose decisions, various periods of time have intervened. The reason therefor is that the value of the dollar has fluctuated drastically. The result of the present materially reduced value of the dollar, has been that it requires a much larger verdict, in number of dollars, to shock the sense of justice than it did a few years ago because of the marked increase in money value of property and services. It was further held in the last above cited case that,

"In an action for damages for personal injuries sustained, the Court will not set a judgment aside because of excessive damages, unless the amount awarded clearly shows that the jury was actuated by passion, partiality, or prejudice."

In the instant case, the verdict was well within the bounds of the evidence in the record. The defendants rely on no fact other than the amount thereof to establish passion or prejudice of the jury in fixing the amount. We, therefore, conclude that this court would be unjustified in invading the province of the jury under the circumstances.

The judgment is affirmed.

WELCH, C. J., CORN, V. C. J., and JOHNSON, WILLIAMS, JACKSON and CARLILE, JJ., concur.

BLACKBIRD, Justice (dissenting).

I cannot agree with the majority opinion.

The parties recognize that, in Oklahoma, no recovery can be had for loss of companionship and "consortium"—that damages in death actions are limited to actual "pecuniary loss." Legal liability was admitted, and the only issue tried to the jury was the amount of damages. The verdict and judgment thereon was in the amount of $62,000 for the wrongful death, plus decedent's funeral expenses.

The majority opinion, according to my view, does not rest on a sound foundation. Said opinion admits that the only evidence as to the value of the loss plaintiffs suffered, was that estimated by the witness, Mrs. Pierce, in answer to the following hypothetical question:

"Assume that a 7 year old girl of average or a little above average mentality has lost her mother through death and that she is going to public school and that her father works and is away from home during the work week and that, because of a skin allergy the girl has to have special attention for her baths and that she has to be bathed more than once a day or as often as is required, and assume further that the child is under a doctor's care because of the skin allergy and the medications are both internally and external-

ly and are of a type that an ordinary person could administer and they have to be administered from time to time by the person caring for the child, and assume further that the child lives in a home of four or five rooms in the west edge of Oklahoma City which is modern, and assume the person caring for the child would have to keep the home for the child and prepare the meals and take car_ of her during the school term and prepare meals for the child during the summer vacation, during the period of time that the child is out of school, and assume further that the person taking care of her would take the personal care demanded and do all of the other things which I have mentioned, what would be the normal ordinary charge for such a person performing such duties?

\* \* \* \* \*

"A. If I were called on to send a nurse out there, I couldn't possibly get one for less than $300 a month."

The answer is confined to a 7-year-old child, and the value of the services outlined is not less than $300 per month. I have examined the record, and I do not find any other evidence fixing the value of plaintiffs' loss—nor does the majority opinion cite any. So, we have the value fixed at not less than $300 per month, or $3,600 per year.

The next thing to determine is how many years will such services be necessary. The testimony given by Dr. B., who had been treating Judy Kathleen, was: "A few more years is as near as I can get to it", and in answer to the question: "Would you say it ordinarily would clear up by the time of puberty?"; he testified: "It has been known to do so." The number of years this child's condition will continue is indefinite.

The majority opinion sustains the judgment on the theory that the medical testimony (above-quoted) concerning Judy's ailment is amply sufficient to establish a reasonable expectation that the deceased would have continued her services and attention beyond the child's majority. I find no

sound basis for this statement. The majority opinion says, in sustaining the verdict and judgment, that it is "simple mathematical calculation" that the life-expectancy was 38.61, and that the judgment was an award of some $1,605 per annum for the expected remainder of decedent's life. I find no authority sustaining this line of argument. It is clear to me that the majority opinion borders on pure speculation. In this state of the record, the only evidence we have as to the length of time Judy's allergy will remain, and require treatment, is "A few more years." Notwithstanding this, and, assuming, for the sake of argument, that the allergy will continue until Judy's majority, there would be a period of only 11 years in which she would need an attendant or caretaker able to render services worth "not less than $300.00 per month", or $3,600 a year. Eleven times $3,600 would be $39,600, which, with the funeral expenses of $893.82, would make a total of $40,493.82.

As to the pecuniary loss suffered by the husband, I find no evidence fixing the value of services allegedly performed by the deceased, other than that above discussed. No doubt, he did suffer damage, but in arriving at the amount we must have evidence as a basis.

The majority opinion says "at first blush" it would seem there should be some evidence of pecuniary value of such services, and, indeed that is so, but says, where the type of service is not of a specialized character and is within the common knowledge of the average man who is also cognizant of what the services are worth, the requirements are relaxed. This is true, but an examination of the record will disclose that such a rule is inapplicable in this case. Also an examination of the cases cited, I am sure, will discourage this theory. The majority opinion cites the case of Anderson v. Christburgh, 176 Okl. 300, 55 P.2d 65, wherein the court awarded $25 per month for care and custody of each child. This amount was supported by testimony and is not in point here. The opinion further stresses the measure to be used in such

evaluation, which is referred to by the legal phrase of "quantum meruit." This rule surely is not applicable.

In arriving at the amount above suggested, there is some speculation. But, giving the evidence a most liberal interpretation, I believe a judgment in that sum should be sustained, and that the plaintiffs should remit the difference, or the judgment be reversed for a new trial.

I am authorized to announce that HAL-LEY, J., concurs in these views.