Joyce O'CONNOR, as Administratrix of the Estate of Benedict O'Connor, Deceased, Plaintiff-Appellee,

v.

UNITED STATES of America, Defendant-Appellant.

No. 246, Docket 25433.

United States Court of Appeals Second Circuit.

Argued April 20, 1959.

Decided Aug. 10, 1959.

582

George S. Leonard, First Asst., Civil Division, Dept. of Justice, Washington, D. C., George Cochran Doub, Asst. Atty. Gen., Cornelius W. Wickersham, Jr., U. S. Atty., Brooklyn, N. Y., Samuel D. Slade, Herman Marcuse, Attys., Dept. of Justice, Washington, D. C., for appellant.

Herbert A. McDevitt, New York City, for appellee.

Before LUMBARD, Circuit Judge, and GALSTON and ANDERSON, District Judges.

ANDERSON, District Judge.

This is the second appeal of the United States from a judgment of the United States District Court for the Eastern District of New York in an action brought against the Government on November 2, 1951 under the Federal Tort Claims Act, 28 U.S.C.A. §§ 1346, 2671 et seq. At the first trial judgment was entered on July 2, 1956, in favor of the plaintiff-appellee in the amount of $150,-000. The Government appealed and on January 28, 1958 this court affirmed the District Court on the issue of liability but reversed and remanded for a further hearing and findings on the issue of damages, 2 Cir., 251 F.2d 939. At the second trial somewhat more extensive proof of damages was offered by the plaintiff-appellee in an effort to substantiate the first judgment; and, on July 23, 1958 Judge Inch again entered judgment in favor of the appellee in the amount of $150,000.

Claiming that this finding was in direct disregard of the mandate of this court on the first appeal, and assigning a number of errors which will be discussed below, the United States has again appealed.

■ The principal considerations in determining what pecuniary loss was sustained by the wife and child of the deceased in this case by reason of his death are the decedent's earning capacity, that is, what he might under all the circumstances reasonably be expected to earn had he remained alive, and the extent to which the wife and child might logically and reasonably have been expected to share in it.

■■ What the decedent was actually earning at the time of his death is a major factor in determining earning capacity. It is also proper to consider the length of time he worked for his employer (in this case four months); the prospect of his retaining his job and the opportunities for other employment; his chances for future promotion or demotion, his and his wife's and child's probable life expectancies, his physical condition, habits and the ordinary vicissitudes of life. National Valve & Mfg. Co. v. Wright, 1951, 205 Okl. 565, 240 P.2d 769, 29 A.L.R.2d 1448; Catto v. Maxey, 1935, 170 Okl. 356, 40 P.2d 633; Belford v. Allen, 1938, 183 Okl. 256, 80 P.2d 671; Connie's Prescription Shop v. McCann, Okl.1957, 316 P.2d 823. The parties stipulated that at the time of his death the decedent was earning $391 a month but the parties each reserved the right to produce evidence relating to "his earning capacity" as distinct from his actual earnings, as such evidence might have a bearing on what he probably would have earned if he had lived. The trial court found that at the time of his death the decedent was earning $8595.03 a year or about $716.25 per month. It appears clear from the record that the court arrived at this sum by adding to the stipulated sum of earnings, i. e. $391 per month, payments for overtime, vacation and allowances to the decedent for expenses as field engineer for Sperry Gyroscope Company, his employer. Of course his vacation pay, about $216 per year, may be considered as bearing on his earning capacity. Based upon the evidence presented at the first trial this court on the first appeal found that the trial court was in error in including the allowances made by the Sperry Gyroscope Company to the decedent for rent and meals, that is, reimbursement of expenses incurred

on behalf of his job, as a part of his earnings.

■■ Ordinarily, when a person is recompensed for special or extraordinary expenses, these amounts are not included in computing his earnings. However, the evidence in the second trial showed that after the wife and child moved to Texas, they shared to a substantial extent in the use of these allowances. To the extent that the allowances were used for the reimbursement of out-of-pocket or special expenses which the decedent paid out in carrying on his work for his employer, and which were not available to him in meeting his own and his family's ordinary living expenses, they would have no bearing upon his earning capacity.

While the trial court's finding in this regard is not as clear as it might be, it appears that it considered $1 per day as the amount of reimbursed expenditures which the deceased incurred because of special errands for the company and unrelated to his usual family expenses.

■■ Evidence that neither the deceased nor his employer treated the whole or a part of the expense allowance as income for income tax purposes may be considered on the question of what use was intended to be made, and what use was made of the money; but, though it is thus evidential, it is not conclusive for the purposes of this case. The test here is whether there was left over from the expense allowance any money which the family could use as it chose and which was in effect net income, and whether it was likely that in the future O'Connor would have been paid such expense allowance under such circumstances that it would actually have been a further supplement to his net income.

■■ The appellant also claims that the District Court erred in determining what proportion of the decedent's probable future earnings would logically and reasonably inure to the benefit of the wife and child. Deducting only the $1 per day or $365 from the total claimed annual earnings of $8595.03, Judge Inch found that the entire balance of $8230.03

went to the wife and child. He allocated no part of the usual family expenditures to the deceased. This was clearly erroneous.

This court in its former opinion ruled that a part of the decedent's contribution for household expenses had to be considered as expended for the decedent himself; and that, on the proof shown and on an assumption most favorable to the plaintiff-appellee, two-thirds of the household expenses was the maximum which could be allocated to her support and that of her son. There is nothing in the records of either of the trials to justify a maximum allocation to the wife and child in excess of two-thirds of the family income after payment of income taxes. The failure to make a finding on this element of damage and to keep it within the two-thirds maximum fixed by this court as the most favorable allowance which, under the circumstances of this case, could be made to the plaintiff-appellee was one of the principal factors in bringing about what we must conclude to be an excessive award of damages.

■ At a new trial consideration should also be given to the termination of the decedent's responsibility to care for and maintain the child after the child achieved his majority. Absent evidence to show it would be reasonable to suppose that the deceased would have continued such care and maintenance beyond minority for some period of time, then, when the child would have become 21 years old or at the end of the period when such care and maintenance would have ceased, the wife would be entitled to a maximum allocation to herself of no more than one-half of the household and family expenses.

■ The appellee presses as an additional element of damage the pecuniary value of the services and aid which she lost and the services, assistance, training and education which the child lost by reason of the father's death. Judge Swan said in the former opinion of this court that nothing is allowed for consortium and parental care and cited

584

the Oklahoma case òf New v. McMillan, 1920, 79 Okl. 70, 191 P. 160, certiorari denied, 1921, 254 U.S. 657, 41 S.Ct. 320, 65 L.Ed. 460. The portion of the McMillan case which he quoted in the footnote makes it quite clear that the consortium and parental care referred to concern sentimental and emotional factors such as loss of society and companionship, and love and affection, as well as mental anguish, grief, and similar elements which are clearly not compensable under Oklahoma law. However, this does not preclude, as a basis for an award of damages, the pecuniary loss of actual services, aid and assistance, rendered by a husband to his wife and training and education furnished by a father to his child. Catto v. Maxey; Belford v. Allen, and Connie's Prescription Shop v. McCann, supra. There must be evidence that such help and care were being given and were likely to continue. At the first trial there was sketchy evidence that the deceased made repairs around his home, instructed his child in mechanics, religious observances and in school homework, but there was no evidence of how frequently this was done or to what extent or whether it was likely to continue. Where there is proof of such services, it is not necessary under Oklahoma law to produce evidence on the value of these services. Connie's Prescription Shop v. McCann, supra. The trial court at the second trial appeared to construe this court's former decision as precluding any recovery of damages on this basis, but the decision did not go that far; and, as noted above, no proper basis for an award of damages for pecuniary loss of services, assistance, education, etc., was provided at the first trial.

■■■ The appellant has also raised a question as to the life expectancy used by the trial court for the decedent who was 36 years old when he was killed. The mortality table used was that of the general populace, male and female, which showed an expectancy of 36.4 years. This is a computation based on averages; it is not conclusive, and the court may give it such weight as it deems reasona-

ble in the light of the other evidence about the individual involved. National Valve & Mfg. Co. v. Wright, supra; Covington Coal Products Co. v. Stogner, 1937, 181 Okl. 35, 72 P.2d 491; Holliday v. Pacific Atlantic S. S. Co., D.C.Del.1953, 117 F.Supp. 729, 734, affirmed 3 Cir., 1954, 212 F.2d 206. In this case it is preferable to use the U. S. Life Tables, 1949–1951, for white males which gives an expectancy for the deceased of 34.76 years. Moreover, where, as in this case, the trial judge apparently used no other evidence in determining the actual expectancy of the decedent but literally adopted the 36.4 years and applied it directly to his estimate of future annual income, the appellant is entitled to have the figure of 34.76 years from the Table for white males used instead.

■■■ We are also asked to decide whether income taxes should be taken from the deceased's total salary before computing what part of his earnings would reasonably be expected to go to the benefit of his wife and child. We think that such a deduction should be made. It has been said that future taxes are too uncertain to admit of advanced computation. But it is wholly unrealistic to suppose that, at any time within the limits of the years the deceased could reasonably have been expected to live, either the discontinuance or substantial reduction of Federal Income Taxes would occur. The deceased, as a salaried employee, never had in his own hands the amount withheld from his earnings for Federal Income Tax purposes; and his wife and child could have no direct benefit from that part of his earnings. While mathematical certainty is not possible, any more than it is in a prognosis of life expectancy and future earnings, nevertheless, an estimate may be made based generally on current rates, from which there should be computed the future income of the deceased after payment of Federal Income Taxes rather than before. The compensatory nature of the right to damages under the Tort Claims Act requires such consideration of Federal Income Taxes; the plaintiff-appellee can

recover only for losses sustained. There is also an implication that "take home" pay is considered the proper basis of earnings on the issue of damages in Oklahoma. Magnolia Petroleum Co. v. Sutton, 1953, 208 Okl. 488, 257 P.2d 307; Note, "Wrongful Death and Survival Actions," 6 Okla.L.Rev. 384, 386 (1953).

■■■ In the present appeal the appellant, the United States, claimed that indirectly, through a contract outstanding with the deceased's employer, The Sperry Gyroscope Co., the Government actually paid the premiums on a flight risk policy in the amount of $50,000 on the life of the deceased. The appellant claims that the deceased paid no part of the premiums, and that the proceeds of the insurance must be deducted from any damages found due. This claim was not raised by the Government at the trial and is not properly before this court at the present time. If, however, there is a retrial of the issue of damages in this case, there appears to be no reason why, if proven, consideration should not be given to this claim.

■■■ A question was also raised as to the rate of discount to be applied to the total estimated future earnings for payment in a present lump sum rather than in salary installments over a period of years. The law of Oklahoma requires that a discount be applied. See, e.g., St. Louis-San Francisco R. Co. v. Floyd, 1930, 146 Okl. 42, 46–47, 293 P. 250, 253–254, 77 A.L.R. 1431; Jones v. Eppler, Okl.1953, 266 P.2d 451, 457, 48 A.L.R.2d 333; St. Louis-San Francisco Ry. Co. v. King, Okl.1954, 278 P.2d 845, 850, 851. Damages under the Federal Tort Claims Act are compensatory, Massachusetts Bonding & Ins. Co. v. United States, 1956, 352 U.S. 128, 132, 77 S.Ct. 186, 1 L.Ed.2d 189; and since "the principle of limiting the recovery to compensation requires that adequate allowance be made * * * for the earning power of money," Chesapeake & Ohio R. Co. v. Kelly, 1916, 241 U.S. 485, 491, 36 S.Ct. 630, 632, 60 L.Ed. 1117, a discount factor must be applied as a matter of Federal law.

■■■ The rate is to be determined by the trier. The rule is that there should be applied for such discount the rate which persons without financial skill could safely secure on their investments. Oleck, Text Book on Damages to Persons and Property, 966.25; Chesapeake and Ohio R. Co. v. Kelly, supra (Federal Employers' Liability Act, 45 U.S.C.A. § 51 et seq.); Gulf, Colorado & Santa Fe R. Co. v. Moser, 1927, 275 U.S. 133, 48 S.Ct. 49, 72 L.Ed. 200 (same). Although savings institutions have been paying $3\frac{1}{4}\%$ and $3\frac{1}{2}\%$ this court cannot say that any rate between $3\%$ and $4\frac{1}{2}\%$ is wrong as a matter of law.

■■■ This case has been pending for nearly eight years. It has been tried twice and is now before this court on a second appeal. As a Federal Tort Claims Act case it was tried, and was triable, only to the court without a jury. Under these circumstances the interests of justice require that this court afford an opportunity to bring the litigation to an end by ordering a remittitur on a basis which will give reasonable protection to the parties. 6 Moore's Federal Practice ¶ 59.05 (3). While the effect of the errors at the second trial, discussed in this opinion, cannot be computed with mathematical exactness, nevertheless, it may be estimated with fair accuracy.

The principal errors were: (1) the failure to allocate to the decedent himself one-third of the benefits derived from his earnings which could reasonably be expected to be dedicated to household and family use until his child became 21 years old and one-half of the benefits thereafter; (2) the failure to deduct anything from his gross earnings for Federal Income Taxes; and (3) the failure to discount for present payment the total anticipated earnings over the period of his life expectancy.

■■ By applying to the trial court's finding of $8230.03, as the probable annual earning capacity of the deceased, the allowance which should be made for the deceased's own share in the money available for family use, by deducting estimated Federal Income Taxes and by

discounting the total anticipated earnings by 3½%, we conclude that, allowing for a change of values in the past eight years and including the funeral expenses of $1180.46, the recoverable damages should be fixed at $90,000 to which may be added any interest which may become due under Title 31 U.S.C.A. § 724a. The judgment of the District Court will be affirmed provided the appellee within ten (10) days hereof files with the Clerk of this Court a remittitur in the amount of $60,000; otherwise the said judgment shall be reversed and the case remanded for a new trial on the issue of damages.