## MOREHOUSE v. MOREHOUSE.*

### S. F. No. 2876; July 15, 1902.

#### 69 Pac. 625.

**Statute of Limitations—Oral Agreement.—Code of Civil Procedure**, section 360, relative to limitations, provides that no acknowledgment is sufficient evidence of a new contract by which to take a case out of the statute unless the same is in writing. Civil Code, section 1697, enacts: "A contract not in writing may be altered in any respect by consent of the parties, in writing, without a new consideration, and is extinguished thereby to the extent of a new alteration." One orally agreed to give another a certain sum in consideration of his moving off certain land, and thereafter the promisor stated to the promisee that he would pay the money as soon as convenient or as soon as he could get the money from a certain source, to which the promisee acquiesced, and there was nothing to indicate that the promisee was pressing payment. Held, that the agreement as to payment from a certain source was not a mere forbearance, and therefore not within section 360, but was either a new or continuing contract within section 360, or a material alteration within section 1697, and being oral did not prevent limitations from running against the promisee from the time of his removal.

**New Trial—Reconsideration of Evidence as to Limitations.—** The trial court has a right to reconsider the evidence before it, and to grant the new trial for the reason that the findings as to limitations rested only on certain evidence, whereas there was other material evidence which showed the findings to be without foundation.

APPEAL from Superior Court, City and County of San Francisco; Edward A. Belcher, Judge.

Suit by J. W. Morehouse against Clara Morehouse as administratrix of the estate of Le Grand Morehouse, deceased. From an order granting a new trial plaintiff appeals. Affirmed.

Geis & Albery and Mastick, Van Fleet & Mastick and W. B. Treadwell for appellant; Rodgers, Paterson & Slack for respondent.

PER CURIAM.—Defendant's intestate, Le Grand Morehouse, died October 22, 1898, and defendant was duly ap-

---

*For subsequent opinion in bank, see 140 Cal. 88, 73 Pac. 738.

pointed administratrix of his estate. It is alleged in the complaint that during his lifetime (date not given) Le Grand entered into an agreement with plaintiff as set forth in plaintiff's claim presented to defendant as administratrix, of which the following is a copy: "Estate of Le Grand Morehouse, deceased, to J. W. Morehouse, Dr. 1899. For the sum of five thousand dollars ($5,000) due claimant, J. W. Morehouse, from said estate, in accordance with an agreement made and entered into during the lifetime of said Le Grand Morehouse between said Le Grand Morehouse, deceased, and claimant, J. W. Morehouse, whereby said Le Grand Morehouse, deceased, agreed to pay to said J. W. Morehouse, claimant, the said sum of five thousand dollars if the said J. W. Morehouse would move off and deliver to said Le Grand Morehouse, deceased, the farm or ranch known as the 'Wrag Canyon Ranch' in Napa county, Cala., said claimant at said time residing on and farming said ranch, and did under and in pursuance to said agreement, move from, and deliver to said Le Grand Morehouse, said ranch, and the said sum has not been paid." The claim was duly verified September 11, 1899, and was thereafter presented to the defendant as administratrix, and was by her rejected October 10, 1899. The complaint alleges an agreement substantially as set forth in said claim, and avers nonpayment, and prays judgment for $5,000. The answer is a specific denial of the averments of the complaint; pleads subdivision 1, section 339 of the Code of Civil Procedure, in bar, and also pleads want of consideration.

The trial court found the allegations of the complaint to be true; that plaintiff was, at the time of making the agreement, lawfully in the possession of the ranch mentioned in the complaint, and lawfully entitled to such possession, and "that the said agreement was made in consideration that plaintiff should move off and deliver to said Le Grand Morehouse the farm or ranch; and said agreement was made upon and for a valuable consideration"; that the cause of action is not barred. Judgment was accordingly entered. A motion for a new trial was made, and the statement of the case settled and allowed by Judge Belcher, who tried the case. The motion was not heard, however, until after he retired from office, and upon hearing before Judge Sloss the motion was granted. The order states that it was granted "solely

upon the grounds of errors in law occurring at the trial and excepted to by the defendant, and upon the further ground that the evidence is insufficient to justify the finding that the plaintiff's cause of action is not barred by the provisions of section 339 of the Code of Civil Procedure, or by the provisions of any other statutes or law, inasmuch as such findings are based wholly upon evidence of a contract to pay when Le Grand Morehouse should receive five thousand dollars from Andrew Barron and from the Wrag Canyon ranch, and such contract, not having been pleaded, could not be effectual to take the case out of the operation of the statute of limitations." George Morehouse, brother of deceased and father of plaintiff, testified that deceased told him, in 1887, that he would purchase what was known as the "Wrag Canyon Ranch," in Napa county, for his, witness', son; that he would deed it to him when he paid for it; that the son would have all the time he wanted to pay for it—twenty years or more if it was necessary; that he should keep it in repair and pay the taxes; that deceased did purchase the ranch, and afterward plaintiff moved onto it; this took place "in fall of the year 1887." This conversation, it is testified, the witness had with deceased at the time of the purchase, and he communicated it to plaintiff, and he said "he would take it [the ranch] and move onto it, and he did so." So far as appears, deceased had no communication with plaintiff concerning the transaction, although he was on the place with the parties at the time of the purchase. There is no evidence that plaintiff paid any taxes levied on the ranch. Witness testified that plaintiff "remained on that place from 1887 until the fall of 1892," and witness testified that he repaired or rebuilt fences, repaired the barn, "fixed up the house," and made improvements which witness estimated of the value of $1,000. Plaintiff left the place in 1892, and the witness testified that shortly before he had a conversation at the place with deceased on the subject of plaintiff's leaving, and was told that "he had sold the place to Andrew Barron, and he wanted Judson [plaintiff] to get off"; "he said he had sold it for $40,000, and he wanted to get Judson off; . . . . he said he would pay him $5,000 to move off directly, or immediately, or as soon as convenient." This conversation was with witness alone, and he communicated it to plaintiff, who was there on the place but took no part in the conver-

sation, and he said, " 'All right,' or something to that effect,'' and thereupon witness so informed deceased. Plaintiff moved off in the course of a week or ten days. Barron moved to the place in October, 1892, as he (Barron) testified, but under lease for two years, and there is no evidence that he purchased or contemplated purchasing the ranch. Witness George Morehouse further testified that several weeks after plaintiff moved away from the ranch deceased "said Judson had moved off, and he could not put his hand right down in his pocket and take out $5,000 at that time to pay him, but he would pay it as soon as convenient, or sooner; as soon as he could get it out of the ranch or from Mr. Barron he would pay it to him." He testified that this was communicated to plaintiff by witness, and he said "that was all right," and he also communicated to deceased this answer not long after. The matter seems to have stood in this position, so far as appears, from 1892 until in June, 1898; there is no evidence of any claim made meanwhile for this $5,000, or that any of the parties mentioned the matter one way or another. In June, 1898, the two brothers, witness and deceased, met in Glenn county on the Clark Valley ranch. Witness testified that at some time during the day deceased said: " 'I have been keeping an account of the ranch question,' and Judson's money was due or about due—was due or about due—and he said, 'George, if you will go with me to-morrow morning to Stockton, I will collect the money, and I will pay it.' When he said he had been keeping an account of the ranch, the Wrag Canyon ranch is what he referred to." Witness did not go with deceased, and not long after deceased was taken sick. "He was up a good deal out and around, walking here and there, in the city and over to Alameda, backward and forward. I was with him all the time." Nothing further seems to have been said about the $5,000, and deceased died in October, 1898. On re-examination, he testified that plaintiff was present on the ranch, on the day of its purchase by deceased, in 1887, and heard deceased tell witness the terms on which plaintiff "could have the place." The only other witness to these transactions in any way corroborative of the foregoing was the wife of witness Morehouse; and she testified only as to one incident, namely, that she was at the house on the Wrag Canyon ranch, and heard some of a conversation

between deceased and her husband concerning her son's leaving the place. She testified that the conversation began in the dining-room, where "they talked [referring to deceased and her husband] about paying $5,000 to Judson Morehouse." She testified: "While they were talking there —they were there some time—I went out, and heard Le Grand Morehouse say, 'I will pay Judson the $5,000 if he will vacate the place and give me possession.' I did not hear any other part of the conversation; I was only there for a moment." Witness Turner, nephew of deceased, testified that he knew the ranch at the time his uncle purchased it, and he described the modest improvements on it; he testified that there were "about two hundred acres of level or farming land on the place. The rest of the ranch consists of sagebrush and mountains and rocks"; he was familiar with the ranch up to the time plaintiff left in 1892, and he testified that the place "was stocked some, at the time Judson took possession of it in 1887, with horses and cattle. There were farming implements there; the place was just as Clayton left it. There were two thousand two hundred acres in this place approximately." He describes the improvements made by plaintiff as slight. F. L. Morehouse, son of deceased, testified that he knew the ranch from the time of its purchase from Clayton by his father, and observed the condition of the improvements, and was on and off the place while plaintiff occupied it. He testified that plaintiff made no improvements to his knowledge, and that he would have seen them if made, "except there might have been minor improvements." Witness Turner testified that he took his uncle, deceased, and Mr. Barron to the ranch in 1892, at the time spoken of by witness George Morehouse, brother of deceased; "that there was trouble either between my uncle Le Grand and Judson or between my uncle Le Grand and my uncle George"; and Barron testified: "They [referring to deceased, George and Judson] had a conversation together at that time which I didn't hear. There was kind of hot words spoke betwixt them, and I stepped to one side. After that heated conversation occurred, Le Grand Morehouse and myself left the place, and walked up the lane quite a ways." He testified that he rented the property, and that his "tenancy began about the 1st of October, 1892." The foregoing appears from the testimony in chief of the witnesses, which

was all the evidence except that it was more or less shaken or strengthened by cross-examination. Plaintiff was not called as a witness to any of the facts in the case, and whether or not deceased paid the debt in his lifetime does not appear otherwise than in the verification to the claim presented to the administratrix.

According to the testimony of George Morehouse as to the terms on which his son gave up the place, there was no condition attached to the promise to pay plaintiff $5,000. The amount became due upon plaintiff's leaving the ranch, which he did prior to October 1, 1892. Some weeks later, deceased told his brother, according to the latter's testimony, that he would pay the money "as soon as convenient, or sooner; as soon as he could get it out of the ranch, or from Mr. Barron."

This evidence was objected to, and the ruling of the court in admitting it is assigned as an error of law—one of the grounds on which the motion was granted. Plaintiff contends that this was not a new contract, nor a modification of the former contract, but was merely an extension of time for the payment of the money due on the former contract, and is not within section 360 of the Code of Civil Procedure, and need not be pleaded. It is further claimed that the legal effect was that the debtor requested forbearance from the creditor, and the creditor agreed and did forbear, and this takes the case out of the statute: Citing State etc. Trust Co. v. Cochran, 130 Cal. 245, 62 Pac. 466, 600. There was no evidence of any such request or of any forbearance. The court might, in granting the motion, either have refused to accept this uncorroborated testimony, or it might have interpreted it to mean no more than that deceased was not at the moment prepared to pay, but did not dispute the right of plaintiff to immediate payment. There is nothing in the record to show that plaintiff was pressing payment, or had demanded it after he left the ranch, or that deceased desired to change the terms of the original agreement. It does not appear how he came to make the statement testified to by his brother George. It seems to have been voluntarily suggested by deceased, and with no apparent motive, and for no apparent consideration, except that "he could not put his hand right down in his pocket and take out $5,000 at that time." The matter rested in this condition for nearly six years, during which time plaintiff seems not to have asked

for payment, and his father, who had been so prominent in the transaction, said nothing about it. When, in 1898, deceased again brought the matter up, not to plaintiff, but to George, it was to suggest readiness to pay; and although George was with his brother all of the time, from June until October, during the latter's illness, he did not mention the payment, nor offer to receive the money which his brother said he was ready to pay; and his brother seems not to have alluded to it again; and it was not until after his death that plaintiff took any steps to enforce payment. The change made in the contract as testified to by George Morehouse, we think, was a material alteration; and section 1697 of the Civil Code provides that "a contract not in writing may be altered in any respect by consent of the parties, in writing, without a new consideration, and is extinguished thereby to the extent of the new alteration." In Thompson v. Orena, 134 Cal. 26, 66 Pac. 24, the claim against an estate was for services as an attorney in the year 1887, and the evidence was that it was orally agreed by decedent that she would pay the attorney when she sold the property described in the complaint. The court said that plaintiff was entitled to payment as soon as the service was performed, and the statute would begin to run accordingly; "and the cause of action could not thereafter be taken out of the operation of the statute by any oral agreement or promise": Citing Civ. Code, sec. 1697. If the subsequent agreement of deceased was a new or continuing contract it was within section 360 of the Code of Civil Procedure, and should have been in writing; and if it was an alteration, it fell within section 1697 of the Civil Code. It was one or the other, and in either case the evidence of an oral contract was inadmissible, and did not take the case out of the statute of limitations.

In granting the new trial, the court made the order upon the grounds of errors in law occurring at the trial, and also on the ground that the evidence is insufficient to justify the findings that the action is not barred by any statute, because, as the court said, the findings were based only upon evidence of a contract to pay when Le Grand Morehouse should receive $5,000 from the Wrag ranch or from Andrew Barron, whereas, as the court must have found, there was evidence of another contract, indisputably barred, which remained unchanged by any act of Le Grand in such manner as would

take it out of the statute. It is true, the court added the further reason that this second or modified agreement was not pleaded, and therefore could not be resorted to as taking the case out of the statute. Whether this latter reason is well taken or not is a question much argued. We do not think it need be determined. The trial court had a right to reconsider the evidence before it, and to grant the new trial for the reason that, in its opinion, the findings as to the statute of limitations rested only on certain evidence, whereas there was other and different material evidence which showed the findings 'to be without foundation. We think the objections made to the admission of evidence were sufficient to entitle the errors to be reviewed, and we also think the specification of insufficiency of the evidence to justify the decision was sufficient.

The appeal is from the order granting a new trial, and the order is affirmed.