567 F.2d 938
 Mary M. ROSITER, Administratrix of the Estate of Harold
LeRoy Rositer, Deceased, Individually, and on
behalf of the surviving children of Harold LeRoy
Rositer, Deceased, Plaintiffs-Appellees, Arline Rositer,
mother and natural guardian of Sheree Rositer and Joel
Rositer, minor children of Harold LeRoy Rositer, Deceased,
Intervenor-Plaintiff-Appellee,
v.
BOB TOOMEY TRUCK LEASING, INC., a Pennsylvania Corporation,
and Robert N. Toomey, Individually, d/b/a Robert N. Toomey
Trucking Company and Charles K. Slenker, Pennsylvania
Citizens, Defendants-Appellants.
 No. 76-1561.
 United States Court of Appeals,
Tenth Circuit.
 Argued and Submitted Sept. 28, 1977.
Decided Dec. 16, 1977.
 
 Ben T. Lampkin, Oklahoma City, Okl. (Joe G. Wolfe, Oklahoma City, Okl., on brief), of Lampkin, Wolfe, Burger, McCaffrey & Norman, Oklahoma City, Okl., for plaintiff-appellee Mary M. Rositer.
 William C. Bowlby of Fagin, Hewett, Mathews & Fagin, Oklahoma City, Okl., for intervening plaintiff-appellee Arline Rositer.
 Dale Reneau of Fenton, Fenton, Smith, Reneau & Moon, Oklahoma City, Okl., for defendants-appellants.
 Before McWILLIAMS, BREITENSTEIN and BARRETT, Circuit Judges.
 BARRETT, Circuit Judge.
 
 
 1
 Bob Toomey Truck Leasing, Inc., et al., (Toomeys) appeal from judgments awarded against them in a wrongful death action following trial to a jury. Jurisdiction vests by reason of diversity.
 
 
 2
 Harold Leroy Rositer (Harold), decedent, was employed as an over-the-road truck driver with Lee Way Motor Freight. At the time of his death Harold was 53 years of age, earning $25,000 annually. The claims filed herein arose as the result of a highway accident on September 2, 1975 in which a Lee Way Motor Freight unit collided with one of Toomeys' vehicles, causing Harold's death. A detailed recitation of Harold's matrimonial background is necessary in order to facilitate the proper alignment of the parties involved and to explain our disposition.
 
 
 3
 Harold married Arline Bennett (Arline) on October 21, 1959 in Akron, Ohio. Two children were born of this marriage, who are Sheree and Joel. Harold and Arline were divorced February 23, 1961. The divorce decree incorporated a separation agreement under which Harold was obligated to pay $12.50 per week child support, respectively, for Sheree and Joel. At trial it was established that at the time of his death Harold was $17,775 in arrears on the child support payments. It was also stipulated that under the child support formula incorporated in the divorce decree, Harold, had he survived, would have been obligated to tender additional payments of $4,250, i. e., the total sum required before Sheree and Joel had each reached their majority, at which time Harold's support obligation ceased.
 
 
 4
 On August 19, 1961 Harold married Bertha Faye Rositer (Bertha) in Akron, Ohio. No children were born of this marriage. Harold and Bertha were separated in early 1963. Bertha did not file for a divorce, she was never served notice of any pending divorce proceedings, and she did not know if Harold had ever actually received a decree of divorce dissolving their marriage. Bertha testified that when she heard of Harold's later marriage to Mary, she "assumed he had or would get a divorce" from her.
 
 
 5
 On January 26, 1967, Harold entered into a common law marriage with Mary Rositer in Oklahoma City. Harold and Mary lived together at Harold's home as husband and wife until the time of his death. Harold told Mary at the time they met that he was "divorced." A daughter, Patricia, was born of this marriage. It is uncontested that Harold, Mary and Patricia were living as a family unit at the time of his death.
 
 
 6
 On September 11, 1975, Mary filed this action as Harold's surviving spouse and as administratrix of his estate. On February 20, 1976, Arline filed a petition in intervention as the mother and natural guardian of Sheree and Joel Rositer, Harold's minor children. Sometime between Harold's death and trial, Bertha also filed a petition in the District Court of Oklahoma County alleging that she was Harold's surviving spouse. Bertha subsequently withdrew this claim following payment of $42,500 from Mary.
 
 
 7
 At trial, Mary presented evidence establishing her common-in-law marriage to Harold, the birth of their daughter, Patricia, their uninterrupted marriage and their life as a family unit until Harold's death. Arline presented evidence of her prior marriage to Harold, the birth of their children, Sheree and Joel, the child support agreement incorporated within the divorce decree, Harold's arrearages on the child support payments, and the balance due under the child support order. Toomeys presented evidence that Harold did not divorce Bertha and that, accordingly, he was not validly married to Mary at the time of his death. Toomeys objected to the introduction in evidence of Harold's child support arrearages.
 
 
 8
 Following submission of the case for deliberation, the jury rendered its verdict as follows:
 
 
 9
 We, the Jury, find in favor of the plaintiffs and intervenor and against the defendants, . . . and fix the amount of their recovery as follows:
 
 
 10
 For Arline Rositer, Mother and Natural Guardian, Intervenor, $22,000 for the support of the children, Sheree and Joel Rositer;
 
 
 11
 For Mary M. Rositer, for the support and maintenance of Patricia Rositer during her minor $50,000;
 
 
 12
 For Mary M. Rositer as Administratrix of the Estate of Harold . . . for the pain and suffering endured by the deceased prior to his death $30,000; and
 
 
 13
 For Mary M. Rositer whom we find to be the surviving wife of the deceased $86,000 for her loss of support, companionship and consortium.
 
 
 14
 (R., Vol. I, p. 56.)
 
 
 15
 Thereafter, on April 2, 1976, the trial court rendered a journal entry of judgment for the damages awarded by the jury. The trial court also awarded interest, as follows:
 
 
 16
 . . . interest at the rate of 6% From the 2nd day of September, 1975 to April 2nd, 1976, be awarded on each of the aforesaid amounts in behalf of plaintiff and the intervening plaintiff and interest at the rate of 10% Be awarded on each of said amounts for plaintiff and intervening plaintiff from April 2, 1976, until such judgment is paid . . .
 
 
 17
 (R., Vol. I, p. 57.)
 
 
 18
 On appeal, Toomeys contend that: (1) the trial court erred in failing to grant their motions to dismiss, for directed verdict, and for judgment notwithstanding the verdict on the claim of Mary that she was the surviving widow of Harold; (2) the trial court erred in admitting a journal entry showing that Harold was $17,775 in arrears on his child support payments; and (3) the provision of the Oklahoma statute providing for prejudgment interest is procedural and therefore does not apply in the federal courts in a diversity case.
 
 I.
 
 19
 Toomeys contend that the trial court erred in failing to grant their motion to dismiss, motion for directed verdict, and motion for judgment notwithstanding the verdict on Mary's claim that she was the surviving widow of Harold. Toomeys reason that the evidence conclusively shows that Mary could not have been legally married to Harold because he had not been divorced from his previous wife, Bertha. The trial court carefully instructed the jury on this matter:
 
 
 20
 With reference to the claim asserted by Mary Rositer as the alleged surviving wife of Harold Rositer, you are instructed that defendants contend she was not his lawful wife at the time of his death.
 
 
 21
 Where the same person has been married more than once, the law presumes that the last marriage is valid, and this presumption extends to and includes common law marriages. You are instructed that if Harold Rositer was capable of entering into a marriage with Mary, then it is not disputed that Harold and Mary were married by operation of the common law. The issue before you is Harold's capacity or incapacity to enter into a marriage with Mary.
 
 
 22
 A person who is married to one individual is conclusively presumed to be incapable of entering into a valid marriage with another individual until the prior marriage is dissolved by death or divorce.
 
 
 23
 The burden is upon the defendants to establish by a preponderance of the evidence that the marriage between Faye and Harold Rositer has not been dissolved by a decree of divorce.If you find that the defendants have established that no decree of divorce dissolved the marriage between Faye and Harold, then you must find that Harold was incapable of entering into a valid marriage with Mary, and Mary may not recover any damages on the claim which she asserts as Harold's alleged surviving wife. Such determination would not, however, affect any recovery of damages on her claims on behalf of the minor child and the estate.
 
 
 24
 If you find that defendants have failed to establish by a preponderance of the evidence that Faye and Harold were never divorced, then you must find that Harold and Mary were common law husband and wife at the time of his death, and Mary is entitled to recover damages as follows.
 
 
 25
 (R., Vol. I, pp. 45-46.)
 
 
 26
 The gravity of this problem was further considered by the trial court in denying appellants' motion for judgment notwithstanding the verdict:
 
 
 27
 Finally, and by far the most difficult question raised by defendants in their motion for judgment notwithstanding the verdict, is the assertion that the evidence conclusively showed that Mary Rositer could not have been legally married to Harold Rositer, and therefore should not have been allowed any recovery as the surviving spouse of the deceased. The facts in connection with this motion are in the main undisputed and will therefore not be recited here, but under all of the evidence I believe that the evidence on this point was sufficient to raise a jury question. The question was presented to the jury under instructions that are not presently attacked, and the jury found that Mary, not Arline, was the wife of Harold Rositer at the time he died. It is conceded that this alleged marriage was a valid common law marriage unless Harold was incapable of entering into a marriage contract by reason of having a living wife at the time the alleged common law marriage was entered into. The Oklahoma law as enunciated in Marcum v. Zaring, (Okl.) 406 P.2d 970, holds to the effect that the validity of a marriage is rebuttable, but that same can only be rebutted by clear, cogent and convincing evidence. This is especially true in cases such as this where children are born of the subsequent marriage. Therefore, the court holds that this portion of the motion of defendants for judgment notwithstanding the verdict should be and hereby is denied.
 
 
 28
 (R., Vol. I, pp. 91-92.)
 
 
 29
 Toomeys argue that the presumption of the validity of Harold's last marriage, i. e., to Mary, was clearly rebutted by their evidence which established: Harold was domiciled in Akron, Ohio, until December, 1965 or January, 1966 at which time he was transferred to Oklahoma City; Harold continuously resided at 8200 Smith Villa, Oklahoma City, from the time he arrived after his transfer until the time of his death; on his February 1, 1965 employment application Harold stated he was "separated," rather than "divorced," an alternative status on the form; on his February, 1965 tax exemption form Harold listed his wife as a dependent under the name of "Faye"; and that neither the county records of Akron nor of Oklahoma City contain any evidence of divorce proceedings or of a divorce decree showing that the marriage of Harold and Bertha had been dissolved. In Marcum v. Zaring, 406 P.2d 970 (Okl.1965), cited by the trial court, the court opined relative to the presumed validity which attaches to the last of multiple, conflicting Oklahoma marriages:
 
 
 30
 There is no question here but that William Filmore was married at least twice and Tina Ladford was his last wife. Their marriage was established beyond question. Since this Court is committed to the rule that in case of conflicting marriages of the same spouse, the presumption of the validity operates in favor of the second marriage, we will hold that the marriage of Tina Ladford and William Filmore was legal and that until their divorce they were husband and wife. See Norton v. Coffield, Okl., 357 P.2d 434.The burden in this case was upon the plaintiffs to show that Linna Filmore and William Filmore had never been divorced. This was not done.
 
 
 31
 We have said that one of the strongest presumptions of the law grounded in public policy favoring and presuming morality, marriage and legitimacy is that a marriage once shown, is presumed to be legal and valid and that this presumption increases in strength with the lapse of time, recognition and acknowledgment of the marriage and birth of children. (Emphasis supplied.)
 
 
 32
 406 P.2d, at p. 973.
 
 
 33
 Mary argues that under Marcum, supra, the trial court properly submitted the question of the validity of her marriage to the jury. Mary argues that the decisions relied upon by Toomeys in which the presumed validity of a subsequent marriage have been overcome are those in which it was possible to definitely fix the past residences of the spouse coupled with uncontradicted evidence of the lack of dissolution of the marriage in each of the definitely fixed residences. Mary contends that whereas Toomeys established Harold's residency in Akron and Oklahoma City and the lack of any divorce decree filed in either of these jurisdictions, Toomeys did not show that a divorce had not been granted in some other jurisdictions. This, according to Mary, is critical because Harold traveled in many different states during his employment and he also worked for several months at a time in California in 1962 and in Portage County, Ohio, in 1964, which are areas where residency for purposes of divorce may have been established. Furthermore, Mary points out that no evidence was presented indicating that Harold had obtained a divorce in any of those areas. These factors, Mary argues, coupled with Bertha's belief that Harold had obtained a divorce or that he would get one after she heard about his marriage to Mary and the birth of Patricia, and Harold's statement to Mary when they met that he was divorced, support the trial court's decision to submit the question of the validity of her marriage to Harold to the jury. We agree.
 
 
 34
 We are most disinclined in cases such as this to overturn a discretionary ruling of a resident federal district judge. This is particularly so, when, as here, the State of Oklahoma has consistently presumed the validity of the last of conflicting marriages "and that this presumption increases in strength with lapse of time, recognition and acknowledgment of the marriage and birth of children." It is uncontested that Harold and Mary lived as husband and wife from January 26, 1967 until the time of his death on September 2, 1975, a period in excess of eight years, during which a daughter, Patricia, was born.
 
 
 35
 We hold that the trial court properly submitted the question of the legality of Mary's marriage to Harold to the jury.
 
 II.
 
 36
 Toomeys contend that the trial court erred in allowing the jury to consider as evidence of damages intervenor's exhibit number eight, a journal entry evidencing that Harold was $17,775 in arrears in his child support payments to Arline for the benefit of Sheree and Joel at the date of his death. Toomeys further contend that the trial court erred in overruling their request for a remittitur and motion for a judgment notwithstanding the verdict because the evidence is insufficient to warrant the award of damages to Arline for the support of Sheree and Joel in excess of $4,250, which is the sum which would have been paid under the decree from the date of Harold's death until the time the children had each reached majority.
 
 
 37
 As noted, supra, judgment was entered for Arline, as mother and natural guardian, in amount of $22,000 for the support of Sheree and Joel. This award was apparently reached by the jury by combining the $17,775 arrearage with the $4,250 future obligation. Toomeys argue that this was in error because the only cognizable claim which could be awarded was the $4,250, representing support and maintenance of the children from the date of Harold's death.
 
 
 38
 When the journal entry was admitted in evidence, the following colloquy transpired:
 
 
 39
 MR. BOWLBY (Counsel for Intervenor): The last exhibit will be Intervenor's No. 8, which is a journal entry, which is in the total amount of $17,775.00 for arrearage of child support. Also, I have furnished this document to the defense.
 
 
 40
 MR. RENEAU (Counsel for Toomeys): Your Honor, I have no objection to the identification of the document and agree that it shows what it says it shows and have no objection of it going into evidence. But I do object for it being considered for the purpose of showing that as damages.
 
 
 41
 THE COURT: Well,
 
 
 42
 MR. BOWLBY: Your Honor, I believe the law in Oklahoma is clear on this particular point, that children are entitled to recover what they can reasonably pecuniary benefits they could reasonably expect to receive.
 
 
 43
 THE COURT: Wait a minute, we are talking about two different things. It doesn't establish any liability. Certainly, this document that they refer to will be received in evidence. What it indicates from what I heard counsel say is that at the time of the death of Mr. Rositer, he was behind with his child support payments in the amount of approximately $19,000.00.
 
 
 44
 MR. BOWLBY: Well,
 
 
 45
 THE COURT: That is no evidence that the defendant was responsible for this death, only some guidance as to where any money that could be awarded, if any is awarded in this case, might go.
 
 
 46
 MR. BOWLBY: Yes, Your Honor, we intend it only as evidence of damage.
 
 
 47
 (R., Vol. VI, pp. 54-55.)
 
 
 48
 Thereafter the trial court instructed the jury relative to the damages which could be awarded Arline on behalf of the children:
 
 
 49
 In determining the amount of damages needed to fairly and reasonably compensate Arline Rositer on behalf of the minor children, Sheree and Joel, for their net pecuniary or financial losses, you may consider Harold Rositer's age and physical condition at the time of the accident, his life expectancy, his habits of industry, ability to earn money and work life expectancy, and his disposition to aid and assist in the support of his children.
 
 
 50
 The net pecuniary or financial loss is equivalent to the pecuniary or financial benefit, if any, which the children might reasonably have expected to receive from Harold Rositer had he lived.
 
 
 51
 You are instructed that it is the legal duty of a father to support his minor children, and the law thus implies substantial loss to the minor children of a deceased father.
 
 
 52
 Damages are to be assessed upon the basis of the reasonable expectation of pecuniary benefit, and while the legal duty to support expires upon a child's attainment of majority, the reasonable expectation of pecuniary benefit may extend after the age of majority.
 
 
 53
 The sum awarded may not in any event exceed the sum sued for, which is $22,000.
 
 
 54
 (R., Vol. I, p. 43.)
 
 
 55
 Toomeys did not object to this instruction when given. Furthermore, they do not challenge its propriety and validity on appeal.
 
 
 56
 Toomeys argue that since Harold had not complied with the child support provision of the divorce decree for an extended period of time, it would be "rank speculation" to suggest that Harold would have ever paid the delinquent child support payments. However, under the law of Oklahoma a substantial loss will be presumed for a child upon the death of a parent. In Armour and Company v. Strickland, 413 P.2d 320 (Okl.1966), the court said:
 
 
 57
 This Court has held that a substantial loss will be presumed in an action by a minor child for the death of a parent. Missouri-Kansas-Texas Ry. Co. v. Canada, 130 Okl. 171, 265 P. 1045, 59 A.L.R. 743; Tackett v. Tackett, 174 Okl. 51, 50 P.2d 293; and Belford v. Allen, 183 Okl. 256, 80 P.2d 671.
 
 
 58
 Petitioner argues that since the deceased was unable to do work of any nature from the time she sustained her accidental injury to the time of her death and contributed nothing to the family coffer during such time, that any presumption that the minor, Mary Strickland, sustained a pecuniary loss was clearly overcome. To follow this theory would mean that where a parent's ability to work and provide for his minor child had been destroyed by an accidental injury which resulted in his death, that the period of disability should be considered in determining whether or not the minor child had sustained a pecuniary loss as a result of the death of his or her parent. Such a rule would result in a grave injustice and would not be in keeping with the purposes for which the Death Benefit Act was enacted. (Emphasis supplied.)
 
 
 59
 413 P.2d, at p. 323.
 
 
 60
 Particularly noteworthy in Armour, supra, we believe, was the court's reluctance to hold that the presumption that a minor would suffer a pecuniary loss upon the death of a parent was overcome by proof that the parent was unable to contribute to the minor's support prior to his death. No less a standard should be applied in the instant case. The trial court acted in accord with Oklahoma case law in admitting evidence of Harold's arrearages. This clearly aided the jury in determining damages, notwithstanding that Harold had not contributed to their support for an extended period of time. The Oklahoma courts have clearly indicated that they are disinclined to bar a jury from the opportunity to consider the damages which befall a minor upon the death of a parent, even in those instances where the deceased parent has been delinquent toward the minor's support for some time. In Tackett v. Tackett, 174 Okl. 51, 50 P.2d 293 (1935), the court noted that a minor's "right to recover damages accruing to the child through the killing of the father does not depend on whether the father had supported or intended to support the child." 50 P.2d, at p. 295, quoting 17 Corpus Juris, page 1208.
 
 
 61
 We hold the trial court did not err in admitting the journal entry of Harold's arrearages in evidence for the jury's consideration and, particularly so when, as here, the court properly instructed the jury on the consideration of damages without objection.
 
 III.
 
 62
 Toomeys contend that the provision of the Oklahoma statute providing for prejudgment interest is procedural and therefore does not apply in a federal district court diversity action. As noted, supra, the trial court awarded prejudgment interest on the damages awarded at the rate of 6% Per annum from the date the suit was commenced to the date of the verdict rendered. Toomeys recognize that this complies with 12 O.S. § 727, but argue that the doctrine announced in Erie Railroad Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938) controls, i. e., that in diversity suits, state law controls questions of substantive law while federal law governs questions of procedure. Toomeys contend that the granting of prejudgment interest involves procedural law. Toomeys argue, accordingly, that since federal procedural rules apply, and since there is no federal provision for prejudgment interest, the trial court erred in applying § 727 in awarding prejudgment interest.
 
 
 63
 We very recently considered this identical question in Casto v. Arkansas-Louisiana Gas Company, 562 F.2d 622 (10th Cir. filed September 20, 1977). In upholding the awarding of prejudgment interest under § 727, we opined:
 
 
 64
 Since there is no conflicts of law issue present in the case at bar, and since it is to be inferred from the Supreme Court's decision that state law not federal law governs, it tends to follow that the law of Oklahoma applies. Decisions of this court bear out this conclusion. The decisions from this Circuit have held for some time that in diversity actions the federal court looks to state law in order to determine the allowability of interest on a recovery. See Kinsella v. Leonard, (10 Cir.) 415 F.2d 574 (1969) (Prejudgment interest was there disallowed on a property damage award since it was not authorized by Colorado law); Woodmont, Inc. v. Daniels, (10 Cir.) 290 F.2d 186 (1961) (applying Utah law to interest on a judgment); North Drive-In Theatre Corp. v. Park-In Theatres, (10 Cir.) 248 F.2d 232 (1957) (The court applied Colorado law to a prejudgment interest claim holding that it was awardable inasmuch as the judgment was liquidated. The contract had been made in New Jersey and performed in Colorado.).
 
 
 65
 All of the above plainly shows that prejudgment interest is not, as here contended by appellees, determined by federal law rather than state law and that the law of Oklahoma governs.
 
 
 66
 The Oklahoma statute, 12 O.S. Ann. § 727, subsection (2), provides for prejudgment interest as to damages for personal injury. This subsection is as follows:
 
 
 67
 When a verdict for damages by reason of personal injuries is accepted by the trial court, the court in rendering judgment shall add interest on said verdict at the rate of six percent (6%) per annum from the date the suit was commenced to date of verdict.
 
 
 68
 The trial court was then correct in its ruling that appellees were entitled to interest on that part of the award which grew out of personal injuries.
 
 
 69
 P. 625.
 
 
 70
 Consistent with Casto, supra, we hold that the trial court did not err in the award of prejudgment interest in the case at bar.
 
 
 71
 WE AFFIRM.
 
 
 72
 BREITENSTEIN, Circuit Judge, concurring.
 
 
 73
 I concur. My only concern is with the apparent inconsistency in Tenth Circuit decisions relating to the allowance of prejudgment interest under 12 O.S. Ann. § 727, Cum.Supp. 1977. In Sade v. Northern Natural Gas Co., 10 Cir., 501 F.2d 1003, 1006, we denied prejudgment interest in a case arising out of fraud and deceit. An unpublished opinion in No. 76-1097, Rowe v. Revlett, a personal injury case, denied prejudgment interest, apparently with inadvertent reliance on Sade. In my opinion, Casto v. Arkansas-Louisiana Gas Co., 10 Cir., 562 F.2d 622, 625-626, correctly states the Tenth Circuit position and allows recovery of prejudgment interest under the Oklahoma statute when the verdict is "for damages by reason of personal injuries."